UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Verdel FARNSWORTH,
Defendant–Appellant.

No. 94–4238.

United States Court of Appeals,
Tenth Circuit.

Aug. 6, 1996.

---

·David Schwendiman, Assistant United States Attorney, Salt Lake City, Utah (Scott M. Matheson, Jr., United States Attorney,

Salt Lake City, Utah, and Brooke C. Wells, Assistant United States Attorney, with him on the brief), for Plaintiff–Appellee.

Vicki Mandell–King, Assistant Public Defender, Denver, Colorado (Michael G. Katz, Federal Public Defender, Denver, Colorado, with her on the brief), for Plaintiff for Defendant–Appellant.

Before BALDOCK, EBEL and BRISCOE, Circuit Judges.

EBEL, Circuit Judge.

Charles Verdel Farnsworth was convicted under 18 U.S.C. § 922(g)(1) of being a felon in possession of a firearm. The district court enhanced Farnsworth's sentence based on its findings that: (1) Farnsworth previously had been convicted of two crimes of violence; (2) the possession of a firearm was in connection with another felony; and (3) Farnsworth was guilty of obstruction of justice. Farnsworth appeals his conviction on the grounds that § 922(g) is unconstitutional. He also appeals his sentence. We **AFFIRM** Farnsworth's conviction, but **REMAND** his case for resentencing.

## I.

On November 8, 1993, Officer James Washington responded to a call that a fight involving a gun was in progress at an apartment building in Salt Lake City. Upon arriving at the location, Officer Washington was told by the complainant, Janet Elliot, that defendant Farnsworth had confronted her in the parking lot and had threatened her with a gun.[1] Elliot told Officer Washington that Farnsworth had left in a red truck with another woman, who was later identified as Marlene Porter.

Officer Washington broadcast an "attempt to locate" the truck. The truck was spotted at a grocery store three blocks away, where Porter and Farnsworth were taken into custody. Officer Washington conducted a patdown search of Farnsworth. He discovered a knife in Farnsworth's front waistband, a loaded .25 caliber pistol in Farnsworth's right rear pocket, and additional ammunition in his front pocket. Farnsworth was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2]

At trial, Farnsworth stipulated that he previously had been convicted of vehicular manslaughter, a felony under California law, and that the gun found in his possession was a "firearm" within the meaning of 18 U.S.C. § 921(a)(3). However, he asserted a justification defense. Farnsworth testified that before the night in question, he had encountered Janet Elliot's husband, Cheyenne Boyer, in the same parking lot. According to Farnsworth, Boyer had menacingly waved a gun at Farnsworth, Marlene Porter and a third individual. John Hardiwell, an acquaintance of Farnsworth who claimed to have witnessed the encounter, corroborated this account. Farnsworth testified that on November 8, the night he was arrested, he was in an apartment in the building when he saw Boyer's car pull into the parking lot. He was unable to tell who was in the car. He testified that he saw the car stop and the passenger window come down, and feared that someone would start shooting into the apartment. He asserted that he therefore started out to confront Boyer, arming himself with the knife. Farnsworth testified that he took the gun only at the urging of Marlene Porter, and denied threatening Elliot with the gun or even taking the gun out of his pocket.[3] Marlene Porter, however, testified that Cheyenne Boyer had never pointed a gun at her, and denied seeing Boyer threaten Farnsworth. Porter also testified that when she visited Farnsworth in jail, he "wanted me to say that I gave him the gun. I did not

---

**1.** Officer Washington's testimony was that Elliot quoted Farnsworth as saying, "How would you like it if I popped a cap in your ass right now?" The defense's objection was sustained, but the statement was included in Farnsworth's presentence report.

**2.** Farnsworth also was charged under state law with aggravated assault on Janet Elliot, a felony.

The charge was dismissed after Elliot failed to appear at state proceedings.

**3.** Farnsworth testified that during his argument with Elliot, "I turned a little bit to my left and she said, your gun is going to fall out your pocket."

give him the gun." The jury convicted Farnsworth of violating § 922(g)(1).

Farnsworth's presentence report identified two prior "crimes of violence": his convictions for vehicular manslaughter and for possession of an unregistered destructive device. The report also stated that Farnsworth qualified for a four-level enhancement for possessing a firearm in connection with another felony offense; namely, aggravated assault on Janet Elliot. Finally, the report recommended a two-level upward adjustment for obstruction of justice based on Farnsworth's alleged attempt to persuade Porter to change her testimony. Farnsworth timely objected to each of these proposed sentencing enhancements, and renewed these objections at sentencing. The district court adopted the findings in the presentence report, and imposed the statutory maximum of 120 months imprisonment.[4] Farnsworth appeals his conviction and his sentence.

## II.

■ Farnsworth initially argued on appeal that 18 U.S.C. § 922(g) is unconstitutional as beyond Congress' authority to regulate interstate commerce. His claim was based on *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the Supreme Court held that Congress in enacting the Gun–Free School Zone Act had exceeded its interstate commerce powers. Farnsworth concedes, however, that such an argument has been foreclosed by this Circuit's decision in *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996), which upheld § 922(g) against an identical *Lopez* challenge. We, of course, cannot overrule the decision of another panel. *United States v. Zapata*, 997 F.2d 751, 759 n. 6 (10th Cir.1993) (citation omitted).

■ Nonetheless, Farnsworth maintains that even if Section 922(g) is facially valid,

the statute was unconstitutionally applied to him. He posits that for a defendant constitutionally to be convicted under the statute after *Lopez*, it must be shown that the individual defendant's activity had a "substantial effect" on interstate commerce; a mere "minimal nexus" is no longer sufficient. This argument, too, has been rejected. In *Bolton*, the appellant challenged his conviction under the Hobbs Act on the ground that, under *Lopez*, the government was required to show that his actions had a substantial effect on interstate commerce. We responded:

> *Lopez* did not ... require the government to show that *individual* instances of the regulated activity substantially affect commerce to pass constitutional muster under the Commerce Clause. Rather, the Court recognized that if a statute regulates an activity which, through repetition, in aggregate has a substantial affect on interstate commerce, "the *de minimis* character of individual instances arising under that statute is of no consequence."

*Id.* at 399 (citations omitted)(emphasis in original). We thus concluded that "under *Lopez*, all the government need show is a *de minimis* effect on interstate commerce in order to support a conviction under the [Hobbs] Act." *Id. See also United States v. Grey*, 56 F.3d 1219, 1225–26 (10th Cir.1995) (recognizing after *Lopez* that a minimal effect on interstate commerce is sufficient to establish federal jurisdiction under the money laundering statute). Here, the government presented expert testimony that Farnsworth's gun had been manufactured in a different state from that in which it was found. "Section 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause," *Bolton*, 68 F.3d at 400 (citation omitted), and the *de minimis* effect of Farnsworth's own actions on interstate commerce does not invalidate his conviction. We

---

4. Farnsworth received a base offense level of 28: an initial base offense level of 24, based on a section 922(g) violation with two prior violent felonies under § 2K2.1(a)(2), plus four levels under § 2K2.1(b)(5) (firearm possession in connection with another felony), plus two levels under

§ 3C1.1 (obstruction of justice), minus two levels under § 3E1.1 (acceptance of responsibility). Based on a criminal history category of VI, Farnsworth's guideline range was 140–175 months, which exceeded the statutory maximum.

therefore affirm Farnsworth's conviction under section 922(g).

### III.

■ Farnsworth also raises a number of challenges to his sentence. We review questions of law regarding the application of the Sentencing Guidelines de novo. *United States v. Wacker*, 72 F.3d 1453, 1476 (10th Cir.1995), *cert. denied*, — U.S. —, 117 S.Ct. 136, — L.Ed.2d — (1996). However, if an objection is not raised at the sentencing hearing, the challenged interpretation is reviewed only for plain error. *United States v. Nelson*, 36 F.3d 1001, 1003 (10th Cir.1994).

#### A. *Prior Crimes of Violence*

■ Farnsworth first contests the district court's enhancement of his sentence based on two prior felony convictions for crimes of violence. In calculating Farnsworth's sentence, the district court applied U.S.S.G. § 2K2.1(a)(2). That Guideline mandates an enhanced base offense level of 24 "if the defendant had at least two prior felony convictions of ... a crime of violence." The district court, relying on the presentence report, found two such prior crimes of violence: (1) a 1972 conviction for possession of an unregistered destructive device; and (2) a 1984 conviction for vehicular manslaughter. On appeal, Farnsworth asserts that the 1972 conviction for possession of an unregistered destructive device was too ancient to be counted under the Guideline. We agree.

The Commentary to § 2K2.1(a)(2) directs that when determining the number of prior convictions under that subsection, the court is to count "any such prior conviction that receives any points under § 4A1.1 (Criminal History Category)." U.S.S.G. § 2K2.1, comment., n. 5. The definitions for purposes of computing criminal history under § 4A1.1 are contained in Section 4A1.2(e), which provides that "[a]ny prior sentence of imprisonment exceeding one year and one month that was *imposed within fifteen years of the defendant's commencement of the instant offense* is counted," as well as any sentence of the requisite length "that resulted in the defendant being incarcerated during any part of such fifteen-year period." (emphasis add-

ed). Farnsworth's sentence for possession of an unregistered destructive device was imposed on December 18, 1972, and his sentence expired in 1976. The government concedes that, according to the commentary to § 2K2.1, the 1972 conviction should not have been counted because it was outside the fifteen-year period for receiving criminal history points under § 4A1.1. Indeed, the presentence report added no criminal history points for this conviction.

■ The government urges us, however, to disregard the commentary. Commentary interpreting the sentencing guidelines is binding on the federal courts unless it violates the Constitution or a federal statute, or is inconsistent with the guideline it interprets. *Stinson v. United States*, 508 U.S. 36, 44–45, 113 S.Ct. 1913, 1918–19, 123 L.Ed.2d 598 (1993). The government argues that the commentary at issue is inconsistent with Guideline § 2K2.1 because the express language of the guideline—providing an enhanced base offense level where the defendant has been convicted of two prior felony crimes of violence—does not contain the limitation that only prior convictions receiving Criminal History points are to be counted.

■ This contention is without merit. In *Stinson*, the Supreme Court noted that, unlike an agency's construction of a federal statute, where the agency's interpretation is relied upon only if the statute's silence or ambiguity "has left a gap for the agency to fill," commentary to the sentencing guidelines "explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice." 508 U.S. at 44, 113 S.Ct. at 1918 (citation omitted). Absent a situation where "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other," *id.*, the commentary should not be found to contradict the guideline, *see id.* We see no such inconsistency here, and thus find the commentary binding.

■ Although Farnsworth timely objected that possession of an unregistered destructive device was not a crime of violence for purposes of the Guidelines, he did not

raise until this appeal the objection that the 1972 conviction is too ancient to be counted. Our review is thus limited to plain error. *See Nelson,* 36 F.3d at 1003; Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). We have held that "basing a sentence on the wrong Guideline range constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b)." *United States v. Smith,* 919 F.2d 123, 124 (10th Cir.1990). The district court's erroneous use of an ancient felony conviction to raise Farnsworth's base offense level thus amounts to plain error, and we remand his case to the district court for resentencing.

■ Farnsworth also challenges the use of his 1984 vehicular manslaughter conviction to enhance his sentence under § 2K2.1. Farnsworth argues that vehicular manslaughter is not a crime of violence. The Commentary to § 2K2.1 references the definition of "crime of violence" found in § 4B1.2, which provides, in relevant part:

(1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) ... otherwise involves conduct that presents a serious potential risk of physical injury to another.

The commentary to this section provides:

"Crime of violence" includes murder, *manslaughter,* [and other enumerated offenses]. *Other offenses are included where* (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) *the conduct set forth* (i.e. expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, *by its nature, presented a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2, n. 2 (emphasis added).

■ For purposes of evaluating whether a prior offense constituted a crime of violence

for purposes of § 4B1.2, we look first to the statutory basis of conviction. If the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, "a court can look beyond the statutory count of conviction in order to resolve a patent ambiguity caused by a broad state statute." *United States v. Smith,* 10 F.3d 724, 733 (10th Cir. 1993). The range of this extra-statutory examination is limited, however, to "the charging papers, judgment of conviction, plea agreement or other statements by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge." *Id.* at 734.

■ Farnsworth was convicted of vehicular manslaughter, in violation of California Penal Code § 192(c)(3), which at that time prohibited "the unlawful killing of a human being, without malice," by:

Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

Cal. Penal Code Ann. § 192 (historical and statutory notes) (West.Supp.1996). Section 23152 of the Vehicle Code provided, in relevant part, that it is unlawful for any person under the influence of alcohol or drugs to drive a vehicle. Cal. Veh. Code Ann. § 23152 (West 1987). Section 23153 provided that it is unlawful for a driver to cause bodily injury to another while driving under the influence of drugs or alcohol. Cal. Veh. Code. Ann. § 23153 (West 1987). Farnsworth, therefore, was convicted of killing a human being while driving under the influence of drugs or alcohol and with gross negligence. We have no difficulty in concluding that this clearly was "conduct that present[ed] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). *Accord United States v. Fry,* 51 F.3d 543, 546 (5th Cir.1995). We agree with the Seventh Circuit that:

[t]he dangers of drunk driving are well-known and well documented. Unlike other acts that may present some risk of physical injury, ... the risk of injury from drunk driving is neither conjectural nor speculative.... Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well known. This is sufficient to satisfy the "serious risk" standard of the "otherwise" clause [of § 4B1.2(1)(ii) ].

*United States v. Rutherford,* 54 F.3d 370, 376–77 (7th Cir.) (holding that vehicular assault by a drunk driver is a crime of violence), *cert. denied,* —— U.S. ——, 116 S.Ct. 323, 133 L.Ed.2d 224 (1995). Because we conclude that the crime of grossly negligent driving under the influence of drugs or alcohol is a crime of violence under U.S.S.G. § 4B1.2, comment., n. 2, clause B, we do not reach the government's argument that all vehicular manslaughter is "manslaughter," and therefore a crime of violence, for purposes of the Commentary to § 4B1.2.

▮ Farnsworth argues that the statute under which he was convicted is ambiguous, so that only by looking to the underlying offense conduct could it be determined whether his crime was one of violence. He relies on *United States v. Gacnik,* 50 F.3d 848, 856 (10th Cir.1995), in which we found Colorado's criminally negligent homicide statute to be ambiguous. The statute in *Gacnik* criminalized causing the death of another through criminal negligence, defined as gross negligence. We held that "[t]o label any and all conduct resulting in a charge of criminally negligent homicide as a 'crime of violence' ... may sweep too broadly." *Id.* We find *Gacnik* inapposite. The statute under which Farnsworth was convicted does not encompass all grossly negligent conduct

that causes the death of another; rather, it criminalizes causing death by driving while under the influence of drugs or alcohol and with gross negligence. As stated above, we believe this describes conduct that "by its nature, presents a serious potential risk of injury to another." U.S.S.G. § 4B1.2, comment., n. 2.[5]

## B. *Possession of a Firearm in Connection with Another Felony Offense*

▮ Farnsworth next asserts that the district court erred in increasing his offense level under U.S.S.G. § 2K2.1(b)(5) based on its determination that Farnsworth possessed the firearm in connection with another felony offense. When reviewing sentence enhancements under the Guidelines, "[w]e review factual findings of the district court under the clearly erroneous standard ... and review de novo questions of law." *United States v. Gomez–Arrellano,* 5 F.3d 464, 465 (10th Cir.1993) (citations omitted). "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, ... and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

▮ A four-level enhancement under section 2K2.1(b)(5) is appropriate if "the defendant used or possessed any firearm or ammunition in connection with another felony offense." A felony offense "means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1(b)(5), comment., n. 7. The government must prove by a preponderance of the evidence that the defendant used the firearm in connection with another felony. *See Unit-*

---

5. A copy of the Information brought against Farnsworth on this offense was attached to the government's brief on appeal. Because we agree with Farnsworth that it does not appear that the district court had this document before it, we grant Farnsworth's motion to strike it from the Record on Appeal. *See Aero–Medical, Inc. v. United States,* 23 F.3d 328, 329 n. 2 (10th Cir. 1994) (striking document included in the appendix because it was not before the district court).

However, at sentencing the government represented to the court that this Information charged

Farnsworth with "operating a vehicle under the influence of alcohol and/or drugs, [and] as a result of that caused the death or injury because of his grossly negligent conduct." Farnsworth did not object to that factual representation, and accordingly he waived his right to challenge the accuracy of the government's description of the Information. *See United States v. Saucedo,* 950 F.2d 1508, 1518 (10th Cir.1991), *overruled on other grounds, Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

*ed States v. Pantelakis,* 58 F.3d 567, 568 (10th Cir.1995). Farnsworth argues that the government did not offer sufficient evidence to meet its burden of proof that he used the firearm in connection with an aggravated assault on Janet Elliot.

 We disagree. Under Utah law, assault is a misdemeanor and includes "a threat, accompanied by a show of immediate force or violence, to do bodily injury to another." Utah Code § 76–5–102. Aggravated assault, a felony, includes an assault in which the defendant "uses a dangerous weapon." Utah Code § 76–5–103. Evidence indicating that a defendant has threatened a victim with a gun supports a conviction for aggravated assault. *See State v. Oldroyd,* 685 P.2d 551, 553–55 (Utah 1984). At Farnsworth's trial, Officer Washington testified that he received a dispatch call that a fight involving a gun was in progress. He then recounted Janet Elliot's contemporaneous statement to him that Farnsworth threatened her with a gun. Marlene Porter testified that she observed Farnsworth yelling at Elliot and kicking her car, and that she repeatedly asked Farnsworth to get in the truck with her before Farnsworth broke off the confrontation. Farnsworth cross-examined both Porter and Officer Washington. At sentencing, the prosecutor stated that Elliot told another detective four days after the incident that Farnsworth had threatened her with a gun.

Farnsworth relies heavily on *United States v. Fennell,* 65 F.3d 812 (10th Cir.1995). In *Fennell,* the only evidence supporting the § 2K2.1(b)(5) enhancement of Fennell's sentence was an allegation by Fennell's girlfriend, made during a telephone interview to the officer preparing Fennell's presentence report, that Fennell had fired his machine gun at her. The preparing officer was not able to observe the girlfriend's demeanor so as to form any opinion as to her veracity, nor did the record contain any other evidence corroborating the girlfriend's account. 65 F.3d at 813. We noted "[t]he facts surrounding Mr. Fennell's arrest, while suggesting

that the machine gun was fired during an altercation between Mr. Fennell and his girlfriend, do not answer the question of whether Mr. Fennell's actions constituted a felony or a misdemeanor." *Id.* In this context, we found it "significant" that Fennell had originally been charged only with misdemeanor assault. *Id.* We concluded that "[u]nsworn out-of-court statements made by an unobserved witness and unsupported by other evidence form an insufficient predicate for a sentence enhancement under § 2K2.1(b)(5)." *Id.* at 814.

 Farnsworth's case is distinguishable. First, the hearsay statement by Elliot was not made in a telephone interview. Rather, it was a contemporaneous statement to the arresting officer, who was able to observe her demeanor and whom Farnsworth had an opportunity to cross-examine at trial. Moreover, Porter's testimony that Farnsworth was screaming at Elliot and kicking her car partially corroborated Elliot's statement, although Porter admittedly did not indicate that she saw the gun.[6] Finally, Farnsworth was originally charged on the underlying act not with misdemeanor assault, but with aggravated assault, a felony under state law. *See* Utah Code Ann. § 76–5–103. As the *Fennell* court noted, "reliable hearsay may be used in the determination of a sentence." 65 F.3d at 813; *see also* U.S.S.G. § 6A1.3, comment. (any information, "so long as it has sufficient indicia of reliability to support its probable accuracy," may be considered in determination of sentence) (citations omitted). We therefore agree with the district court that the government established by a preponderance of the evidence that Farnsworth used the firearm in connection with a felony.

## C. *Obstruction of Justice*

 Finally, Farnsworth claims that the district court erred in enhancing his sentence by two levels, pursuant to U.S.S.G. § 3C1.1,[7] for obstruction of justice. We re-

---

6. In her own statement to federal authorities, "Porter said Charles Farnsworth told her Janet [Elliot] saw the gun in his pocket and told him it was going to fall out."

7. The Guideline provides: "If the defendant willfully ... attempted to obstruct or impede [ ] the administration of justice during the investigation,

view the district court's factual determinations concerning obstruction of justice for clear error only, giving due deference to the district court's ability to judge the credibility of the witnesses upon whose testimony it relied. *United States v. Edwards*, 69 F.3d 419, 440 (10th Cir.1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996).

■■■■ The district court based the obstruction of justice enhancement upon Porter's testimony at trial that when she visited Farnsworth in jail, he told her to lie and say that she handed him the gun on the night of the incident. While conceding that the attempt to influence a witness warrants an enhancement under this section, *see United States v. Fetherolf*, 21 F.3d 998, 1000 (10th Cir.1994), Farnsworth argues that Porter's testimony was incredible. At sentencing, Farnsworth presented an affidavit, signed by Porter but written by Farnsworth, contradicting Porter's trial testimony on this issue. Farnsworth also argues that "Porter had an obvious motive to li[e], given that she admitted she had stolen bail money given to her by Farnsworth's grandfather, and her boyfriend had warned her that she could be charged as an accessory." Br. of Appellant at 40.[8]

■■■■ Because Porter testified at trial, the district court had an opportunity to evaluate her credibility. "Credibility, of course, is a matter for the district court, not this court." *United States v. Draper*, 24 F.3d 83, 85 (10th Cir.1994). Giving due deference to the district court's ability to observe Porter and evaluate her testimony, we find no clear error in the district court's enhancement of Farnsworth's sentence for obstruction of justice.

Farnsworth also argues that the district court erred in failing to make specific factual findings on this objection, pursuant to then Fed.R.Crim.P. 32(c)(3)(D).[9] That rule provided that when a defendant alleged a factual inaccuracy in the presentence report, "the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." As to this objection, the district court at Farnsworth's trial merely stated that it adopted the analysis of the Probation Department as accurate and correct.

■■■■ We repeatedly have held that a district court may not satisfy its obligation by simply adopting the presentence report as its finding. *See, e.g., United States v. Henning*, 77 F.3d 346, 349 (10th Cir.1996); *United States v. Roederer*, 11 F.3d 973, 980–81 (10th Cir.1993); *United States v. Jimenez*, 928 F.2d 356, 365 (10th Cir.), *cert. denied*, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991). Accordingly, we remand to the district court so that it may enter an appropriate finding on this objection.

### IV.

Farnsworth's conviction under 18 U.S.C. § 922(g) is **AFFIRMED.** However, we **RE-**

---

prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."

8. Farnsworth also argues that because he admitted possessing the weapon, it could have made no difference to his defense whether the jury found that Porter handed it to him or that he took it himself. We are uncertain what conclusion he wishes us to draw from this. He may be arguing that we should assume that because it would not have helped him, he would not have attempted to influence Porter. Alternatively, he may be arguing that even if he did ask Porter to lie, he did not attempt an obstruction of justice because her lying could not have affected the outcome of the trial.

In any event, we disagree that it "made no difference" whether or not Porter handed Farns-

worth the gun. Farnsworth's defense, that he feared for his safety and for the safety of the occupants of the apartment, would have been bolstered if the jury had believed Porter so shared his fear that she handed him a firearm.

9. Now Fed.R.Crim.P. 32(c)(1). Rule 32 was amended effective December 1994, after imposition of Farnsworth's sentence. Former subdivision (c)(3)(D) is now placed in subsection (c)(1) and reads: "For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing."

**MAND** his case to the district court for resentencing in accordance with this opinion.