**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT DANIEL MALSON,

    Defendant-Appellant.

Case No. 97-8102
(D.C. 97-CR-0006-D)
(District of Wyoming)

---

**ORDER**

---

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

---

On April 6, 1998, this Court entered an Order and Judgment affirming

Robert Daniel Malson's sentence for sexual exploitation of a child in violation of

18 U.S.C. § 2251.  On April 21, 1998, Mr. Malson filed a petition for

"reconsideration," contending that a mistake in his brief had caused us to base our

decision on an erroneous factual premise.  We will treat Mr. Malson's petition as

a request for rehearing.    See Fed. R. App. P. 40.

Mr. Malson is correct when he surmises that he misled us when he stated in

his brief, "In August of 1996 Appellant was married.  He and his wife

subsequently separated and divorced."    See Aplt's Br. at 3 n.2.  Although Mr.

Malson now advises us that he obtained his divorce prior to August of 1996 and,

thus, was not technically the victim's uncle at the time he committed his crime, this new information does not alter our conclusion that the district court properly sentenced Mr. Malson.

The evidence in this case demonstrates that, during the summer of 1996, the eleven-year-old victim spent the night at the residence shared by Mr. Malson and his ex-wife on a number of occasions. [1] See Rec. vol. II, at 9-10; id. vol. IV, at 4. During one of these visits, after Mr. Malson's ex-wife had gone to sleep in the bedroom, Mr. Malson stayed up to watch a movie on television. See id. vol. III, at 23. Mr. Malson watched the movie from his living room couch, while the victim, who lay beside him on the couch, slept. See id. At some point in the evening, without waking the victim, Mr. Malson got his camera and took at least a half-dozen photographs of the victim's genital area. See id.; id. vol. IV, at 4-6.

At sentencing, the district court increased Mr. Malson's offense level by two points because it determined that § 2G2.1(b)(2) of the Sentencing Guidelines applied to him. See Rec. doc. vol. II, at 20. Section 2G2.1(b)(2) provides for a two-level enhancement if "the minor . . . was . . .in the custody, care, or supervisory control of the defendant." The application notes indicate that "[s]ubsection (b)(2) is intended to have broad application and includes offenses

---

[1]Although the couple divorced in 1991, they shared a residence at the time of the crime. See, e.g., Rec. vol. II, at 9-10; id. vol. IV, at 4.

involving a minor entrusted to the defendant, whether temporarily or permanently." U.S.S.G. § 2G2.1 cmt. 2. The notes further state that "temporary caretakers are among those who would be subject to this enhancement" and emphasize that courts "should look to the actual relationship that existed between the defendant and the child and not simply to the legal status of the defendant-child relationship." Id.

Mr. Malson contends that the victim's mother entrusted her daughter to Mr. Malson's ex-wife, not to Mr. Malson, and, thus, that § 2G2.1(b)(2) should not apply to his sentence. We refuse to embrace such a formalistic and short-sighted reading of the Sentencing Guidelines. The fact that Mr. Malson's ex-wife may have agreed to the child's visit without consulting him is not dispositive; when a parent sends her child to a home shared by two adults, she is entrusting her child to the care of both of the residents of that home, not just the person who was primarily responsible for arranging the visit. Cf. United States v. Chasenah, 23 F.3d 337, 338 (10th Cir. 1994) (finding that U.S.S.G. § 2A3.4(b)(3), which is identical to U.S.S.G. § 2G2.1(b)(2), applied to a defendant who lived with the minor victim but was neither related to the child nor her primary caretaker, reasoning that "the guideline falls upon anyone who . . . abuses even peripheral custody, care, or supervisory control of the victim"); United States v. Merritt, 982 F.2d 305, 307 (8th Cir. 1992) (holding that § 2A3.1(b)(3), which is identical to §

3

2G2.1(b)(2), applied because the defendant, who lived with the victim's grandmother, "had greater access to the victim because of his relationship with the victim's grandmother, and he used that access to sexually abuse the victim").

Moreover, in his brief, Mr. Malson fails to mention that, at the time of the crime, his ex-wife had gone to sleep and left him alone with the victim. Thus, even were we to accept Mr. Malson's claim that the victim's mother initially entrusted her daughter only to the care of his ex-wife, Mr. Malson ignores the fact that when his ex-wife went to sleep, she, in turn, entrusted the victim to his care. Cf. United States v. Crane, 965 F.2d 586, 587 (8th Cir. 1992) (holding that § 2A3.1(b)(3) applied even though the victim's mother only momentarily relinquished custody and control of her daughter to the defendant, who was her boyfriend).

Finally, as previously noted, the application notes instruct us to "look to the actual relationship that existed between the defendant and the child." U.S.S.G. § 2G2.1 cmt. 2. Here, the victim had previously spent the night at Mr. Malson's residence on numerous occasions. Thus, she had ample reason to trust him. In fact, the evidence demonstrates that she felt so thoroughly comfortable in Mr. Malson's company that not only did she sleep in a room in which only the two of them were present, but she did so while he sat on the very same sofa on which she lay. Such a showing of trust militates in favor of applying a "custodial"

4

enhancement. Cf. United States v. Sam, 1997 WL 406011, at **1 (9th Cir. July 14, 1997) (stating that a "defendant is in a custodial position for purposes of this enhancement [§ 2A3.4(b)(3)] when he is a person the victim trusts"); Crane, 965 F.2d at 587 (reasoning that § 2A3.1(b)(3) applied because, among other things, the defendant "was no complete stranger to" the victim, and, thus, the victim "had no reason to be wary of [the defendant]").

All of these factors demonstrate that Mr. Malson was not, as he contended at sentencing, in "essentially . . . the same position as an interloper [would] have been." See Rec. vol. II, at 9. Rather, when he violated 18 U.S.C. § 2251, he was serving as the victim's temporary caretaker. He capitalized upon this relationship, as well as the trust that the victim placed in him, in order to commit this crime. It is exactly this sort of exploitation of trust that § 2G2.1(b)(2) envisions.

Accordingly, we deny Mr. Malson's request for rehearing. [2]

Entered for the Court,

Robert H. Henry
Circuit Judge

---

[2]On May 5, 1998, the government filed a brief entitled "United States' Response to Defendant's Motion for Reconsideration." Fed. R. App. P. 40(a) provides that "[n]o answer to a petition for rehearing will be received unless requested by the court." We requested no such answer in the present case. However, our decision to deny Mr. Malson's petition for rehearing moots the question of whether we should accept the government's brief.

F I L E D
United States Court of Appeals
Tenth Circuit

APR 6 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT DANIEL MALSON,

Defendant-Appellant.

Case No. 97-8102
(D.C. 97-CR-0006-D)
(District of Wyoming)

**ORDER AND JUDGMENT** *

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

During August of 1996, Robert Daniel Malson's 11-year-old niece spent the night at his home on several occasions. During one of these visits, while his niece slept, Mr. Malson took several photos of her genitalia. After the laboratory that processed those photos contacted law enforcement authorities, the

---

\* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

government filed a six-count indictment against Mr. Malson. Mr. Malson subsequently pled guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251. The district court, over Mr. Malson's objection, sentenced him to 90 months imprisonment, four years of supervised release, and $1,100 in fines and special assessments. Mr. Malson now appeals only the district court's decision to apply U.S.S.G. § 2G2.1(b)(2) and, thus, enhance his sentence by two levels.

In appeals involving sentencing issues, we review legal questions de novo and accept factual findings unless they are clearly erroneous. United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir. 1996).

U.S.S.G. § 2G2.1(b)(2) provides for a two-level sentence enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." Mr. Malson devotes all of his briefing efforts to attempting to demonstrate that no "custodial" relationship existed between his victim and him. However, even were he to convince us that the victim was not in his custody at the time he committed the crime, nowhere in his brief does Mr. Malson contest that, at that time, the victim was his wife's sister's daughter and,

2

hence, his niece. [1]   Thus, although Mr. Malson was the victim's uncle by virtue of marriage rather than blood, he was nonetheless related to her.   See XIII Oxford English Dictionary 551-52 (2d ed. 1989) ("relative: . . . B.3. One who is connected with another or others by blood or affinity"); XVIII   id. 908 ("uncle: . . . 1.a. A brother of one's father or mother; also, an aunt's husband (= uncle-in-law)"); U.S.S.G. § 2G2.1 cmt. 2 ("Subsection (b)(2) is intended to have broad application").

We conclude that § 2G2.1(b)(2) applies to Mr. Malson because he was related to the victim and, accordingly, AFFIRM Mr. Malson's sentence.

The mandate shall issue forthwith.

Entered for the Court,


Robert H. Henry
Circuit Judge

---

[1]Although Mr. Malson was married to the victim's aunt at the time of the crime, the couple subsequently obtained a divorce.

3