**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan Antonio MARTINEZ,**
**Defendant–Appellant.**

**No. 01–2262.**

United States Court of Appeals,
Tenth Circuit.

April 18, 2002.

Before TACHA, Chief Judge, McWILLIAMS, Circuit Judge, and RUSSELL,* District Judge.

---

## ORDER AND JUDGMENT **

TACHA, Chief Judge.

Juan Antonio Martinez appeals his sentence for possession of a firearm by a felon. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), and AFFIRM.

* The Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.
** This order and judgment is not binding precedent, except under the doctrines of law of

### I. Background

Martinez pleaded guilty to one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Presentence Investigation Report recommended a four-level increase in the base offense level under the Sentencing Guidelines, because Martinez had allegedly used the firearm in connection with a felony. U.S. Sentencing Guidelines § 2K2.1(b)(5). Martinez objected that there was no factual basis for this recommendation, and the district court therefore heard testimony on the issue. The district court found that Martinez had used the firearm to shoot at a dwelling, which is a felony in New Mexico. N.M. Stat. Ann. § 30–3–8. The court therefore increased the offense level by four levels, for use of a firearm "in connection with another felony offense." U.S. Sentencing Guidelines § 2K2.1(b)(5).

The sole question on appeal is whether the district court properly found that Martinez used the firearm to shoot at a dwelling. If this finding was justified, the district court properly applied section 2K2.1(b)(5) and increased the base offense level by four. If, as Martinez argues, there was insufficient evidence to support this finding, then the district court erred in applying this enhancement.

### II. Discussion

On the evening of his arrest, Martinez and his cousin went to another man's residence, and Martinez made threatening remarks. Later, Martinez and his cousin drove by the residence again in separate cars. Police followed the two cars, and a

the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

police officer pursuing Martinez saw him throw a shotgun from his car before the officer stopped and arrested him. The essential facts of the initial encounter and the arrest are undisputed. The disputed facts concern what happened as Martinez was driving past the residence.

Martinez stipulated at sentencing that, on the evening of July 8, 2000, he and his cousin drove to Carlos Gomez, Jr.'s home in a blue Mustang. There was a shotgun between the driver's and passenger's seats. Martinez asked to see Gomez's son, and, after being told that the son was not there, he told Gomez, "Your son f ... ed up and I'm going to get him. I shot up your car because someone threw a rock at the house. Tell your boy I will be back."

According to the Presentence Investigation Report and the prosecution, Martinez and his cousin drove by Gomez's residence again later that evening in separate cars— Martinez in the blue Mustang, and the cousin in a purple Grand Am—and Martinez used the shotgun to fire a shot or shots at the residence. The district court agreed. Martinez denies the shooting. He argues that the evidence is insufficient to support the finding that any shots were fired and that, even if shots were fired, the evidence does not show that he was the shooter.

Section 2K2.1(b)(5) of the Sentencing Guidelines states: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense ... increase by 4 levels." To support the enhancement, the government has the burden of proving by a preponderance of the evidence that Martinez used the gun in connection with another felony. *United States v. Farnsworth,* 92 F.3d 1001, 1009 (10th Cir.1996). The district court found that Martinez used the shotgun to fire at a dwelling, which is a felony in New Mexico. N.M. Stat. Ann. § 30–3–8. The district

court therefore increased the base offense level by four. Martinez argues that this increase was in error, because there was insufficient evidence to support the underlying factual finding.

We review the sentencing court's factual findings for clear error. *United States v. Vaziri,* 164 F.3d 556, 568 (10th Cir.1999). In conducting our review, we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. § 3742(e).

Gomez testified that he was watching a video with his wife and child when he heard gunshots, which he described as "pop, pop, pop, pop." When he heard the shots, he took cover, checked that his two-year-old son was safe, then ran outside. He did not see a muzzle blast, but he recognized Martinez's car driving away when he ran outside. Gomez also stated that he had seen the car well enough in the initial encounter to get the license plate number, and that he recognized the car when he saw it again. Although it was dark when the car returned, Gomez testified that his own motion light and several neighbors' porch lights were on at the time. He testified that there was damage to the adobe walls of his home and that the police had found shotgun pellets, but defense counsel pointed out on cross-examination that the police report contained no statement that pellets had been found.

Martinez's cousin testified that Martinez was driving behind him, and that he heard a "pop" that he thought was either a gunshot or a car backfiring. The cousin did not see a muzzle blast, although he knew that Martinez was behind him and he could see Martinez's headlights.

Martinez stipulated that, minutes after he had driven by Gomez's home, a police officer attempted to pull him over, but he sped away. When another officer attempt-

ed to stop Martinez, he pulled into an apartment complex and threw a shotgun from the car. The officer then took Martinez into custody. Police officers recovered the gun, which was a twelve-gauge shotgun. They also found twelve-gauge and 38 caliber ammunition in the car, and another shotgun and ammunition in the trunk. Based on his possession of the twelve-gauge shotgun, Martinez, who had prior felony convictions, pleaded guilty to possession of a firearm by a felon.

Martinez argues that there was insufficient evidence to support a finding that any shots were fired. He argues that no one saw a muzzle blast, that there was no evidence of damage or injury, that no shells were found, and that the witnesses disagreed about whether there was one "pop" or multiple "pops" and whether the sound they heard was gunfire or a car backfiring. He argues further that, even if the evidence shows that someone fired a gun, the evidence fails to establish that it was Martinez. He argues that Gomez did not see Martinez, could not see who was driving the car, was unsure if he saw one or two cars, and was uncertain about how far away the car was when he saw it. He also points out that it was dark and there were no streetlights, and that there was inconsistency between the cousin's testimony about when he and Martinez drove past Gomez's residence and Gomez's testimony about when he heard shots. Finally, he asserts that there was no report that any residue or smell from the gun was detected on Martinez, and that there was no evidence to show that the gun had been fired recently.

Although there was conflicting testimony, we must accept the district court's factual findings if they were not clearly erroneous. Gomez testified that he heard shots, ran outside, and recognized Martinez's car driving off. Martinez's cousin

testified that he heard a sound that might have been a gunshot as Martinez was driving past Gomez's home. Martinez stipulated that he had told Gomez earlier that evening, while a shotgun was in view in his car, that "I will be back." He also stipulated that he sped away when police attempted to stop him minutes after he had driven past Gomez's residence, and that he threw a shotgun from his car as the police approached. This evidence was sufficient to support a finding by the preponderance of the evidence that Martinez used the shotgun to fire at Gomez's residence.

### III. Conclusion

The district court did not commit clear error when it found that Martinez used the firearm in connection with another felony and adjusted his sentence pursuant to section 2K2.1(b)(5). We therefore AFFIRM the sentence imposed by the district court.