**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

PATRICK AYON,

     Defendant-Appellant.

No. 06-2259

(D.C. No. CR-05-2160-WPJ)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, HOLLOWAY,** and **MURPHY**, Circuit Judges.

Defendant Patrick Ayon appeals his seventy-month sentence, contending that the

district court erroneously added four levels to his offense level under U.S.S.G. §

2K2.1(b)(5) for using or possessing any firearm or ammunition in connection with

another felony offense. The district court concluded that Ayon had used a firearm to

commit the New Mexico felony offenses of aggravated assault, shooting at a dwelling or

from a vehicle, and contributing to the delinquency of a minor. Ayon contends that the

district court failed to make sufficient factual findings and conclusions of law and that the

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

only evidence supporting the enhancement was unreliable hearsay.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On August 27, 2005, Ayon encountered Joseph Ramirez at a birthday party in Albuquerque, New Mexico.  After a verbal altercation between the two men, Ayon and Ramirez were asked to leave the party.  Ayon then went home with his two minor nephews, Lawrence and Michael Candelaria (hereinafter referred to as Lawrence and Michael, respectively), and was joined at some point by a friend named Michael Vallez.  Over the course of the day, Ayon and Ramirez traded a series of threatening phone calls, with each man threatening the other man with various forms of physical violence.

Eventually, Ayon asked Lawrence, Michael, and Vallez to accompany him to Ramirez's apartment because he and Ramirez were going to fight.  When he arrived at the apartment complex, Ayon got out of his car and Ramirez then walked out onto the balcony of his apartment with a rifle.  The parties agree that Ayon and Ramirez shot at each other.  Ayon then drove away from the scene with Michael in the car, leaving Vallez and Lawrence behind.

Albuquerque Detective Jamie Mueller was nearby and heard a series of gunshots, the first set being from what he described as a higher-caliber weapon and the second set from a lower-caliber weapon.  He proceeded to investigate.  After driving a block, Mueller saw Ayon driving through a stop sign as he was trying to put on his seat belt.  Mueller initiated a stop and Ayon was eventually arrested for driving while intoxicated.

-2-

During the stop, Mueller asked Ayon if he had heard gunshots. Ayon first replied he had not, but later admitted that he had heard gunshots "and that kids were exchanging gunfire between two apartment complexes." ROA, Vol. IV, at 10. Over the next few hours, the police pieced together that a shooting had occurred at Ramirez's apartment complex.

As a result of the police finding a shotgun in Ayon's vehicle, Ayon was indicted for violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), felon in possession of a firearm and ammunition. Ayon eventually pled guilty to the charge. The presentence report (PSR) submitted by the Probation Office prior to sentencing included in its Guidelines calculation a proposed four-level enhancement of Ayon's base offense level under § 2K2.1(b)(5), which provided in part: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase [the defendant's offense level] by 4 levels."[1] The PSR characterized Ayon's firing of a firearm at Ramirez at the apartment complex as the use or possession of a firearm in connection with another felony offense:

> Pursuant to U.S.S.G. § 2K2.1(b)(5), if the defendant used or possessed any firearm or ammunition in connection with another felony offense, increase by 4 levels. The offense conduct regarding this offense revealed that Albuquerque, New Mexico, police officers responded to a scene regarding shots fired. During the investigation, officers spoke to witnesses, who stated they observed the defendant shooting a handgun at an unidentified victim standing in a parking lot. Although the victim was never found or identified and there are no pending charges against the defendant regarding the shooting, the defendant could have been charged with a felony offense

---

[1] This provision has since been moved to § 2K2.1(b)(6) without otherwise being altered. See United States v. Howse, 478 F.3d 729, 730 (6th Cir. 2007). We will nonetheless continue to refer to this provision as "§ 2K2.1(b)(5)" for consistency's sake.

punishable by more than a year.  Therefore, a 4 level enhancement is applicable

PSR at 5.  With a criminal history category of V and a total offense level of twenty-one, the PSR recommended a Guidelines sentence range of seventy to eighty-seven months.

Ayon objected to the four-level enhancement under § 2K2.1(b)(5), arguing that his use of the firearm was not a felony offense because he was acting in self-defense.  The district court held an evidentiary hearing before sentencing to determine if there was sufficient evidence to support the enhancement. Testifying on Ayon's behalf, Lawrence stated that he was "positive" that Ramirez fired first.  ROA, Vol. IV, at 36, 39.  The district court also heard testimony from Special Agent Timothy King of the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, who was working on a task force with the Albuquerque Police Department on the day of the shooting.  King testified about two statements that Michael made to King on the night of the shooting, in which Michael at first stated that he did not know who was shooting at the apartment complex but later said that he was "certain" that Ayon shot first.  Id. at 62, 86.

After the evidentiary hearing concluded, the district court overruled Ayon's objection to the four-level enhancement, concluding that the United States had established that Ayon's conduct in firing a weapon at Ramirez's apartment complex satisfied § 2K2.1(b)(5) because it constituted the use of a firearm in connection with the following New Mexico state felony offenses: aggravated assault; shooting at a dwelling or from a vehicle; and contributing to the delinquency of a minor.  The district court adopted the

PSR's calculation of Ayon's total offense level and imposed a term of imprisonment of seventy months.

## II.

Ayon contends that the district court erroneously applied § 2K2.1(b)(5)'s four-level enhancement for use or possession of a firearm or ammunition in connection with another felony offense. First, Ayon asserts that the district court erred by failing to make sufficient factual findings to support the enhancement. Second, Ayon contends that the only reliable evidence presented at the sentencing hearing showed that he acted in self-defense when he fired at Ramirez, not that he committed a felony offense under state law.

### A. *Standard of Review*

In reviewing a district court's application of the Sentencing Guidelines, "we review factual findings for clear error and legal determinations de novo." United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam) (citations omitted). The court "'will not reverse a lower court's finding of fact simply because we would have decided the case differently. Rather, [we] . . . ask whether, on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed.'" United States v. Edeza, 359 F.3d 1246, 1248 (10th Cir. 2004) (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001)) (alterations in original). It is the government's burden to demonstrate, by a preponderance of the evidence, that Ayon is subject to a sentence enhancement under § 2K2.1(b)(5). United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir. 1996) (citing United States v. Pantelakis, 58 F.3d 567, 568 (10th Cir. 1995)).

B. *Sufficiency of the District Court's Factual Findings*

Ayon argues that the district court's factual findings are inadequate because the district court failed to rule on the disputed issue of whether Ayon acted in self-defense and also failed to explain how the facts supported a four-level enhancement. Ayon asserts that we must vacate his sentence and remand to the district court for further factual findings because we would otherwise have to engage in conjecture to divine the basis for the district court's enhancement.

We review compliance with the Federal Rules of Criminal Procedure de novo. United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006) (citation omitted), cert. denied, 127 S. Ct. 1338 (2007). Rule 32(i)(3)(B) provides that, "[a]t sentencing, the court . . . must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." The rule ensures that the district court's calculation of the Guidelines range did not result from legal or factual error by exposing the basis of the calculation and guarantees that the burden of proof on enhancements is not impermissibly shifted to the defendant. See United States v. Williams, 374 F.3d 941, 947 (10th Cir. 2004) (discussing earlier version of the rule). "A ruling on a disputed issue need not be exhaustively detailed, but it must be definite and clear." Id. at 947 n.9.

In the case before us, the district court's findings and conclusions are definite and clear enough to satisfy Rule 32. The district court ruled on the disputed issue of whether

-6-

the shooting on August 27, 2005, justified a four-level enhancement, concluding that a four-level enhancement was appropriate. ROA, Vol. IV, at 102-03. The district court found that Ayon's conduct amounted to the state felony offenses of aggravated assault; shooting at a dwelling or from a vehicle; and contributing to the delinquency of a minor. Id. at 103. Further, the district court noted on the record that it was basing its decision on the testimony presented at the sentencing hearing, instead of simply adopting the PSR's factual findings. See Farnsworth, 92 F.3d at 1011 (remanding to the district court for failing to make factual findings under Rule 32 because the district court "simply adopt[ed] the presentence report as its finding").

Contrary to Ayon's contention, we need not engage in conjecture to determine the district court's reasoning. As presented, the district court had to choose between the conflicting statements of two witnesses. The only evidence directly supporting the United States' argument that Ayon did not act in self-defense was Michael's statement to Agent King that Ayon fired first. The only evidence directly supporting Ayon's argument that he acted in self-defense was Lawrence's testimony that Ramirez, not Ayon, fired first. Therefore, the only avenue by which the district court could have arrived at its conclusion – that Ayon used a firearm in connection with a felony offense – was to believe Michael's statement and disbelieve Lawrence's.

Ayon argues that the basis of the district court's ruling is unclear because it might have concluded that Ayon used or possessed a firearm in connection with another felony offense, and rejected Ayon's claim of self-defense, in one of two ways: (1) Ramirez fired

-7-

at Ayon first, but Ayon would not be entitled to plead self-defense in a New Mexico criminal case because Ayon was "the aggressor" by driving to the apartment complex to initiate a fight with Ramirez; or (2) Ayon fired at Ramirez first. Ayon theorizes that the district court might have come to the first, rather than the second, conclusion because the United States argued this position at the hearing. Ayon further argues that the first conclusion misstates New Mexico law because a person who initiates a fight with non-deadly force may still defend himself under New Mexico law if his opponent resorts to deadly force in retaliation, thereby raising the possibility that the district court's application of the four-level enhancement to Ayon's offense level resulted from a mistaken interpretation of state law. Without a clearer indication of whether the district court adopted the first or second conclusion, Ayon argues that we should remand to allow the district court to make a more specific finding.

The district court could not have erred as Ayon suggests because the United States did not argue to the district court that Ayon was the aggressor simply for initiating a fight. Instead, the United States argued that circumstantial evidence pointed to Ayon as "the aggressor" *who initiated the gun battle by firing his gun at Ramirez*, such as various comments that Ayon made before the fight indicating that he and his posse should "do it." ROA, Vol. IV, at 93-94. At most, the United States argued that Ayon's decision to initiate a fight with Ramirez corroborated that Ayon fired the first shot in the gun battle, not that Ayon was precluded from arguing self-defense by the fact that Ayon drove over to the apartment complex to start a fight using non-deadly force. See generally id.

-8-

("Michael Candelaria also indicated that it was the defendant who fired the first shot, which is consistent with the defendant driving over to the southeast part of town and looking to confront Joseph Ramirez.").

C. *Sufficiency of the Evidence at Sentencing Hearing*

Ayon next contends that the United States failed to show by a preponderance of the evidence that he used a firearm in connection with the felony offenses of aggravated assault and shooting at a dwelling or from a vehicle.[2]  In New Mexico,

[a]ggravated assault consists of either:

A. unlawfully assaulting or striking at another with a deadly weapon;

B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or

C. willfully and intentionally assaulting another with intent to commit any felony.

Whoever commits aggravated assault is guilty of a fourth degree felony.

N.M. STAT. ANN. § 30-3-2 (2007).

Assault consists of either:

---

[2] The United States does not argue that the district court correctly determined that the events of August 27, 2005, constituted "contributing to the delinquency of a minor." Instead, it argues that any error the district court may have made on delinquency was harmless given its conclusion that Ayon committed two other state felony offenses: aggravated assault and shooting at a dwelling or from a vehicle.  Because the United States' argument on delinquency relies on whether the district court correctly decided that Ayon committed aggravated assault and shooting at a dwelling or from a vehicle, we will focus on whether sufficient evidence supports the district court's conclusion that Ayon committed those two offenses.

A. an attempt to commit a battery upon the person of another;

B. any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or

C. the use of insulting language toward another impugning his honor, delicacy or reputation.

Id. § 30-3-1. As for shooting at a dwelling, it "consists of willfully discharging a firearm at a dwelling or occupied building. Whoever commits shooting at a dwelling or occupied building that does not result in great bodily harm to another person is guilty of a fourth degree felony." Id. § 30-3-8(A).

King's testimony which related Michael Candelaria's statement establishes, by a preponderance of the evidence, that Ayon committed aggravated assault and shooting at a dwelling. Michael told King that Ayon fired a gun at Ramirez, establishing that Ayon unlawfully assaulted Ramirez with a deadly weapon. See id. § 30-3-2 (aggravated assault). It also established that Ayon willfully discharged a firearm at a dwelling or occupied building, specifically Ramirez's apartment complex. See id. § 30-3-8(A) (shooting at a dwelling).

Ayon argues, however, that Michael Candelaria's statement should be disregarded because it is hearsay lacking sufficient indicia of reliability. If that statement is removed from consideration, Ayon argues, then the only reliable evidence produced at the hearing as to his culpability was Lawrence's testimony that Ramirez fired first. Ayon concludes that the only reliable evidence therefore demonstrated that Ayon acted in self-defense and

-10-

therefore was not guilty of a felony offense. See Pantelakis, 58 F.3d at 568 ("An intent to lawfully defend oneself – even with an unlawful weapon – does not, however, warrant a 2K2.1(b)(5) enhancement.").

As a result, whether sufficient evidence supported the four-level enhancement depends on whether the district court properly considered Michael's hearsay statement in applying the enhancement. Ayon is correct that Michael's statement to King is hearsay because it is an out-of-court statement being offered to show that Ayon fired first. See FED. R. EVID. 801(c). For hearsay to serve as a basis for a sentencing enhancement, the Sentencing Guidelines require that a hearsay statement possess "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); see also United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005) (citation omitted). This is not a high standard, for it requires only "minimal indicia of reliability." United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995) (citing United States v. Beaulieu, 893 F.2d 1177, 1181 (10th Cir. 1990)).

Michael's statement possessed sufficient indicia of reliability and the district court properly relied on it to determine that Ayon did not act in self-defense.[3] First, Michael's description of who fired what and when roughly matched what Mueller heard several

---

[3] In an attempt to discredit Michael's statement, Ayon points to Michael's apparent use of marijuana earlier in the day and speculates that Michael may have been swayed to implicate Ayon out of fear of being charged as an accomplice, but credibility is an issue for the district court, not us, to resolve. Farnsworth, 92 F.3d at 1011 ("'Credibility, of course, is a matter for the district court, not this court.'") (quoting United States v. Draper, 24 F.3d 83, 85 (10th Cir. 1994)).

blocks away. Michael told King that Ayon fired first with a .357 revolver, followed by Ramirez returning fire with a shotgun and Vallez shooting with a .22 pistol. ROA, Vol. IV, at 61-62. Mueller testified, consistent with Michael's description, that he heard a series of "larger-caliber shots . . . followed by a series of what sounded [like] smaller, higher-pitched fire, firing rounds." Id. at 8. Although Ayon correctly notes that Michael's statement and Mueller's testimony do not correspond perfectly, the general trend is the same in both: a high-caliber weapon was fired first (.357 revolver), followed by shots from a lower-caliber weapon (.22 pistol).

Second, as Ayon's nephew, Michael had a motive to make up a story in Ayon's *favor*, yet instead made a statement *incriminating* Ayon. Third, Lawrence's testimony corroborates that Ayon went to Ramirez's apartment to attack Ramirez.[4] According to Lawrence, before the shooting Ayon threatened to beat Ramirez up and told Ramirez that he wanted to fight. See id. at 32 ("'You better be prepared to get your ass whooped' and shit like that."), 42 ("Q. And your understanding was he was going over there because he wanted to have a fight with Joseph Ramirez? A. Yes, sir."). When Ayon arrived at the complex, he told Ramirez to come outside because they were "gonna throw down." Id. at

[4] Citing to United States v. Gregg, 467 F.3d 1126 (8th Cir. 2006), Ayon argues that the district court could not have used any of Lawrence's testimony to support the enhancement if it found that Michael's testimony was more credible on the issue of who fired first, or else the district court's factual findings would have been internally inconsistent. See id. at 1129 ("A court's credibility findings for purposes of calculating the appropriate Guideline range and fashioning a sentence under § 3553(a) must be internally consistent."). Yet Ayon does not explain why it would be inconsistent for the district court to find Lawrence's testimony to be more credible as to some facts, such as the events leading up to the shootout, but not as to others, such as the shootout itself.

-12-

42 (internal quotation marks omitted). Although Lawrence testified that Ayon only wanted to "fight" Ramirez and, somewhat paradoxically, did not want to "hurt" Ramirez, Lawrence also explained that he was so worried that something bad might happen – like a shooting – that he tagged along to try to prevent events from escalating. See id. at 27-28, 42 ("I said, 'I'm going to go with you,' . . . because I didn't want nothing else to happen like what did happen."). Fourth, Ayon's dishonest denial, when pulled over by Mueller minutes after the shooting, that he had heard gunfire, and his subsequent story about "kids . . . exchanging gunfire," confirm that Ayon was attempting to hide criminal conduct. See id. at 10.

Ayon also contends that the facts of his case are analogous to Fennell, in which we reversed a district court's application of a four-level enhancement under § 2K2.1(b)(5) based on a hearsay statement that the defendant's former girlfriend made to a probation officer. 65 F.3d at 813. We noted, in part, that the former girlfriend had not made a sworn statement and there were no facts in the record corroborating her account of the alleged shooting. Id. We held that "[u]nsworn out-of-court statements made by an unobserved witness and unsupported by other evidence form an insufficient predicate for a sentence enhancement under 2K2.1(b)(5)." Id. at 814. Ayon contends that, similarly, Michael's statement was unsworn and there is no corroborating evidence to support Michael's accusation that Ayon fired first.

Fennell, however, is easily distinguished. Unlike the probation officer in Fennell, who interviewed the former girlfriend by telephone and therefore "did not have an

opportunity to observe her demeanor," id. at 813, Ayon admits that King interviewed Michael in person, Aplt. Opening Br. at 28-29. As a result, King could observe whether Michael appeared to be telling the truth.[5] Further, Michael's statement was given only a few hours after the shooting occurred, whereas the former girlfriend in Fennell was interviewed after the defendant pled guilty and the probation office was preparing the presentence report. See Fennell, 65 F.3d at 813. Because Michael's statement was made closer to the event in question, his statement is more likely to be credible. See Farnsworth, 92 F.3d at 1010 (concluding that a hearsay statement was more reliable than the one in Fennell because it was "a contemporaneous statement [made] to the arresting officer"). Finally, as noted above, there *is* corroborating evidence supporting that Ayon fired first.

In a final related challenge to his sentence, Ayon argues that application of § 2K2.1(b)(5) to increase his sentence violates due process, under Apprendi v. New Jersey, 530 U.S. 466 (2000), because it involved judicial fact-finding under a preponderance of the evidence standard, not jury fact-finding which requires proof beyond a reasonable doubt. Aplt. Opening Br. at 30-32. Apprendi applies when a sentence has been increased above the statutory maximum based on a fact not found by a jury beyond a reasonable

---

[5] Although Ayon acknowledges that King interviewed Michael in person, Ayon alleges that King thought Michael was lying. Ayon's argument misstates King's testimony: King thought that Michael had left out facts in his first statement, in which he said that he did not know who had been firing weapons at the apartment complex, but had "decided to come clean in the second statement" when he said that Ayon fired first. ROA, Vol. IV, at 86.

doubt.  See United States v. Willis, 476 F.3d 1121, 1131 n.3 (10th Cir. 2007).  Apprendi

does not apply when a fact found by a judge merely increases the defendant's Guidelines

range without increasing the defendant's sentence above the statutory maximum.  Id.  As

a result, Ayon's seventy-month sentence did not violate Apprendi because it did not

exceed the ten-year statutory maximum.  See 18 U.S.C. § 924(a)(2).

III.

Because Michael's statement to King that Ayon fired first at Ramirez possesses

sufficient indicia of reliability, the district court did not err in relying upon it to find that

Ayon used or possessed any firearm in connection with the felony offenses of aggravated

assault and shooting at a building pursuant to U.S.S.G. § 2K2.1(b)(5).  We AFFIRM the

district court's sentence of seventy months.

Entered for the Court


Mary Beck Briscoe
Circuit Judge