**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard Eugene SMITH, Defendant–Appellant.**

**No. 91–4169.**

United States Court of Appeals, Tenth Circuit.

Nov. 30, 1993.

Walter F. Bugden, Jr., Bugden & Lundgren, Salt Lake City, UT, for defendant-appellant.

Mark K. Vincent, Asst. U.S. Atty. (David Jordan, U.S. Atty., with him on the brief), District of Utah, Salt Lake City, UT, for plaintiff-appellee.

Before McKAY, Chief Judge, ANDERSON and BRORBY, Circuit Judges.

PER CURIAM.

Defendant Richard E. Smith was convicted of bank robbery pursuant to 18 U.S.C. § 2113(a) (1988). Defendant appeals both the conviction and the sentence. The record reveals that on May 28, 1992, Defendant entered the Sun Capital Bank and handed the teller a note which read: "This is a robbery. All the money you have *now* fast." (R.Vol. IV at 5.) Thereafter, Defendant departed with $2,381. Defendant was arrested four days later and confessed to robbing the bank. Defendant told the police he was a drug addict and had robbed the bank to pay off a drug dealer who had threatened to harm the Defendant and his family if the debt was not repaid that evening.

At trial, the prosecutor read a stipulation entered into by Defendant and his counsel wherein Defendant admitted to robbing the bank.[1] Defendant's evidence at trial focused solely upon a defense of duress. The jury rejected Defendant's claim of duress and convicted him of bank robbery. Defendant received an enhanced sentence as a career offender and was sentenced to 190 months in

---

1. The stipulation provided:

On Tuesday, May 28, 1991, at approximately 3:40 p.m., Richard Eugene Smith, also known as Michael Lynn Smith, the Defendant herein, entered the Sun Capitol Bank located at 60 South 100 East, St. George, Utah, and whose deposits were then insured by the Federal Deposit Insurance Corporation and robbed the bank teller, Marcia Kaplan, of $2,381.00 belonging to and in the care, custody, control, management, and possession of Sun Capitol Bank.

Part of the money taken by the defendant in the robbery was $251 in bait money. Bait money is a packet of U.S. Currency which is placed in a bank teller's drawer and monitored by an alarm system. The individual bills and serial numbers in the bait money packet are also recorded and kept with one of the officers of the bank. The "bait money" purpose is to set off an alarm, inform police when money is taken from the drawer, and enable the money to be traced in the event of a theft. $50 of the bait money taken by the defendant was recovered from Mrs. Barbara Johnson who had received it from the defendant for the purchase of a car.

(R.Vol. III at 8–9.)

prison, followed by three years of supervised release.

## I.

Prior to trial, Defendant filed a Motion in Limine to prohibit the government from impeaching him with his prior convictions for a 1988 robbery and a 1989 burglary. Defendant claims the trial court committed reversible error by denying his motion and permitting the admission of this evidence.

■ A district court's decision to admit evidence of a prior conviction under Federal Rule of Evidence 609 is reviewed for an abuse of discretion, *United States v. Jefferson*, 925 F.2d 1242, 1256 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991), and we give considerable deference to the district court where the court has engaged in the weighing process prescribed by that rule. *United States v. Halbert*, 668 F.2d 489, 495 (10th Cir.), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982).

Federal Rule of Evidence 609 provides in pertinent part:

**(a) General Rule.** For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and *evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused....*

Fed.R.Ev. 609 (emphasis added).

■ After a review of the record, we are satisfied that the district court did not abuse its discretion in this regard. The court balanced the probative value of the evidence against the prejudicial effect to the Defendant and determined that the probative value justified admission of this evidence, given Defendant's duress defense and the importance of his credibility. The district court also instructed the jury on the limited purpose for which the convictions were admitted. Under the circumstances of this case, we hold that the district court did not abuse its discretion in admitting this evidence and we affirm on this issue.

## II.

■ Defendant also contends that the district court erred by failing to grant him a new trial based upon his ineffective assistance of counsel claim.[2] The district court rejected Defendant's Motion for a New Trial because it determined Defense Counsel's conduct had not been objectively unreasonable.

Defendant asserts his trial counsel's representation was defective in two ways: Defense Counsel advised Defendant to stipulate that he had robbed the bank, and Defense Counsel failed to request a jury instruction for the lesser included offense of bank larceny. Defendant asserts Defense Counsel's conduct rose to the level of ineffective assistance of counsel entitling him to a new trial because the lesser included offense of bank larceny was viable under the facts of this case and because bank larceny has a significantly lesser penalty than does the more serious offense of bank robbery.[3]

In an affidavit filed in support of Defendant's Motion for New Trial based upon ineffective assistance of counsel, Defendant's counsel averred that:

After reviewing the facts and police reports with the Defendant, I determined that the only viable defense available to the Defendant was the defense of duress and/or coercion.

---

2. Defendant's trial counsel also represented Defendant on this appeal. The record reveals that at the time Defendant moved for a new trial based upon his ineffective assistance of counsel claim, Defense Counsel requested leave to withdraw as counsel, which request was denied by the district court.

3. Bank robbery carries a base offense level of 20 while bank larceny carries a base offense level of 4. United States Sentencing Commission, *Guidelines Manual*, §§ 2B1.1 and 2B3.1 (Nov. 1990).

In presenting this defense, I did not, as a matter of strategy, purposefully decline to present the jury with the option of convicting the Defendant of the lesser included offense of bank larceny.

On the contrary, I overlooked the availability of this possible defense.

(Affidavit of Defense Counsel ¶¶ 2–4.) Thus, Defendant asserts that at the time Defense Counsel advised him to stipulate to the robbery and failed to request a jury instruction on the lesser included offense of bank larceny, he was simply unaware of the consequences of his actions.

■ Although the preferred avenue for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack, *see Beaulieu v. United States*, 930 F.2d 805, 806–07 (10th Cir.1991), we find that the record in this direct appeal is sufficient to resolve the issues presented.

The benchmark of an ineffective assistance of counsel claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "To establish ineffective assistance of counsel sufficient to warrant reversal of a conviction, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense." *United States v. Pena*, 920 F.2d 1509, 1518 (10th Cir.1990) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). Because a defendant must meet both of these requirements to establish an ineffective assistance of counsel claim, a claim may be disposed of for failure to meet either criteria. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069; *e.g.*, *Coleman v. Brown*, 802 F.2d 1227, 1233 (10th Cir.1986).

■ The standard for determining whether an attorney's performance is deficient or not is that of reasonably effective assistance. "In any case presenting an ineffective assistance claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances" and a defendant must demonstrate that counsel's conduct fell below an objective standard of reasonableness given prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. In making this determination, we are to avoid the distorting effects of hindsight and we are required to "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065. A defendant must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," and we are reminded that there are "countless ways to provide effective assistance" of counsel. *Id.*

At first blush, Defense Counsel's recommendation that Defendant stipulate to the facts of the robbery and Counsel's failure to request a jury instruction for bank larceny would appear unreasonable in light of Defense Counsel's averment that he was unaware of the availability of the lesser included offense of bank larceny and thus necessarily ignorant of the consequences of his conduct. Such a conclusion would appear to be supported by language in *Strickland* referring to counsel's duty to investigate law and facts, or that a reasonable decision be made that makes a particular investigation unnecessary. *Id.* at 690–91, 104 S.Ct. at 2066. However, given *Strickland's* focus on objectively reasonable representation considering all circumstances, we are of the view that Defense Counsel's representation at trial was nonetheless reasonable in this case.

■ The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants receive a fair trial so that the outcome of the proceeding can be relied upon as the result of a proper adversarial process. *See id.* at 691–92, 104 S.Ct. at 2067. By focusing the inquiry into counsel's representation upon an objective standard of reasonableness under all the circumstances, we are of the view that counsel's representation as a whole should be considered when determining whether the defendant received a fair trial.

In this case, the record demonstrates Defendant received the assistance of an attorney experienced in criminal matters as evi-

denced by the well-presented defense of duress. Furthermore, by stipulating to the facts of the robbery, Defense Counsel was able to direct the jury's attention to Defendant's exigent circumstances and away from the fear and harm that resulted from Defendant's conduct in the bank. This strategy focused the jury's attention upon factors sympathetic to the Defendant. In our view, Counsel's representation was objectively reasonable.

If under the facts of this case counsel had in fact been aware of the availability of the lesser included offense but had nonetheless proceeded for strategic reasons as was done in this case, we are of the view that such representation would have fallen within "the wide range of reasonable professional assistance." *See id.* at 689, 104 S.Ct. at 2065. Bank robbery includes all the elements of bank larceny, *see* 18 U.S.C. § 2113 (1988); *United States v. Slater,* 692 F.2d 107, 109 (10th Cir.1982), with the difference being that bank larceny does not require the use of force, violence, or intimidation. *See id.* Because the record demonstrates no force or violence was used in the instant case, the issue of intimidation would have been dispositive of whether the lesser included offense of bank larceny was viable. As we have previously noted:

> The test adopted by this court to determine intimidation is not purely objective. Instead, we have looked to three things: (1) whether the situation appeared dangerous, (2) whether the defendant intended to intimidate, and (3) whether the bank personnel were reasonable in their fear of death or injury.

*Slater,* 692 F.2d at 109 (citations omitted).

A stranger's urgent demand for money typically would create a situation in a banking institution that appears dangerous and would justify bank personnel in fearing for their lives. Moreover, because Defendant's admitted exigent circumstances and the underlining of the word "now" in the note passed to the bank teller suggests an intent to obtain funds by intimidation, it is far from clear that prevailing professional norms would require an attorney to request a jury instruction on bank larceny under the facts of this case. To the contrary, under these facts an attorney could reasonably choose to avoid confusing the jury with alternative defenses and try the case solely upon the defense of duress. Furthermore, as previously noted, there are strategic reasons for stipulating to the facts of the robbery in an attempt to obtain the sympathy of the jury.

■ We are satisfied that even if Defense Counsel had been aware of the availability of the lesser included offense of bank larceny, Counsel's actual representation would still have been within the range of objectively reasonable representation. Consequently, we are of the view that where counsel's representation is objectively reasonable under all the circumstances of a case and ensured that the defendant received a fair trial overall, it makes no difference that certain decisions may have been unreasonable or made without a full recognition of the consequences. We hold that in the instant case Defendant has failed to demonstrate that Counsel's representation was constitutionally deficient, and we affirm the district court on this issue.

## III.

The district court classified Defendant as a career offender under U.S.S.G. § 4B1.1 and sentenced him to 190 months in prison. On appeal he challenges that classification, which increased his guideline sentencing range from 67–78 months to 168–210 months.[4]

Section 4B1.1 provides that:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a

---

4. After determining that Defendant's offense level was 30 and criminal history category VI, the sentencing court found the resulting guideline range to be 188 to 235 months. (R.Vol. IV at 29.) Our review of the sentencing table in the Guidelines Manual at 5.2 (Nov. 1990) leads us to conclude that the proper sentencing range should have been 168 to 210 months. We do not address this issue further, however, because it is not raised on appeal and because the actual sentence imposed falls within the proper guideline range.

controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

United States Sentencing Commission, *Guidelines Manual*, § 4B1.1 (Nov. 1990).[5] Defendant concedes that he meets the first two requirements, but contends that he does not meet the third requirement of two qualifying prior felony convictions. The issue is whether the district court erred in counting Defendant's 1989 second-degree burglary conviction in California as a crime of violence.

The details with respect to the crime in question are as follows. Defendant removed a window screen and entered an office in a commercial building through an unlocked window. Using a screwdriver, he pried the lock off a file cabinet drawer, removed a cash box from the drawer, and exited the office. There is no indication that he was armed. The office was unoccupied and its door was locked at the time of the burglary. No confrontation with any person occurred. A police report, apparently attached to the criminal complaint, set forth the facts described above. *See* Brief of Plaintiff/Appellee, App. Ex. "F" and "G." The report also explained that the commercial building Defendant entered housed the Rouge Center, a drug rehabilitation center providing outpatient and inpatient services, and that it was the office of the Center's operations manager which was burglarized.

Defendant was charged with and subsequently convicted of violating section 459 of the California Penal Code, which reads:

> Every person who *enters* any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, ... railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, ... any house car, ... inhabited camper, ... vehicle ... when the doors are locked, aircraft ..., or mine or any underground portion thereof, *with intent to commit* grand or petit larceny or *any*

*felony is guilty of burglary.* As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not.

Cal.Penal Code § 459 (emphasis added). The district court examined Defendant's conduct in its context and concluded that it "presented a serious potential risk of physical injury" to others, explaining its rationale as follows:

> The guidelines say a crime of violence is any offense including burglary of a dwelling, arson or extortion, involves use of explosives or otherwise involves conduct that presents a serious potential of risk of physical injury to another.

> Now wasn't this conduct, that presented a serious potential risk of physical injury to another?

> .    .    .    .    .

> I don't know how—it's a per se thing. The man was in a place where there were people burglarizing. He was engaged in conduct that presented a serious potential threat of harm to another.

> There were people there. It wasn't like he was going into an abandoned shack.

(R.Vol. IV at 19.)

We review the Guideline's definition of "crime of violence" *de novo. See United States v. Levy*, 992 F.2d 1081, 1083 (10th Cir.1993). Section 4B1.2(1) and its commentary define "crime of violence" as follows:

> [A]ny offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is *burglary of a dwelling,* arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

**5.** The Guidelines Manual in effect on the date that the defendant is sentenced applies. U.S.S.G. § 1B1.11 p.s. (Nov. 1992). Defendant was sentenced on October 8, 1991. Thus, references to the guidelines herein are to the Guidelines Manual (Nov. 1990), unless otherwise indicated.

U.S.S.G. § 4B1.2(1) (emphasis added). The November 1, 1990 version of Application Note 2 to section 4B1.2 states:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the *conduct set forth in the count of which the defendant was convicted* involved use of explosives, or, *by its nature,* presented a serious potential risk of physical injury to another.[6]

U.S.S.G. § 4B1.2 comment. (n. 2) (Nov. 1990) (emphasis added).

Both parties agree that subsection (i) is inapplicable because the offense of second-degree burglary in California does not require as an element any use or threatened use of physical force. *See* Cal.Penal Code §§ 459, 460(b). Rather, the question is whether Defendant's burglary conviction was a crime of violence under subsection (ii), either because it was a burglary of a "dwelling," or because it "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another." We first examine Defendant's burglary conviction under the "otherwise" clause.

### A. The "Otherwise" Clause

■ The Sentencing Commission has promulgated a string of changes and clarifications to or affecting the "otherwise" clause of the career offender section of the guidelines since 1987 (*see* U.S.S.G.App. C, amendments 49, 268, 433, 461) and the courts still remain in substantial disagreement over how it should be analyzed and applied. In evaluating the risk posed by the defendant's conduct, some courts look only to the actual charge and elements necessary to the conviction, i.e., a categorical approach.[7] Other courts examine the conduct alleged in the count of the indictment charging the offense, even, it seems, if the conduct was not necessary to the conviction.[8] And still other courts examine more broadly the underlying facts and circumstances of the defendant's conduct, in context, to assess the nature of the risk, even where the relevant conduct posing a risk is neither directly charged nor necessary to the conviction.[9] In this case we are not compelled to choose sides in the analytical controversy, because we would reach the same conclusion using any approach.[10]

We decide this case on the basis of two conclusions we have reached with respect to the "otherwise" clause. First, the Sentencing Commission intends that the clause be

---

**6.** The Supreme Court has recently held that generally the Sentencing Commission's commentary is to be given "controlling weight, unless it is plainly erroneous or inconsistent with the [guideline]," and that specifically the section 4B1.2 commentary is a "binding interpretation of the phrase 'crime of violence.'" *Stinson v. United States,* ⸺ U.S. ⸺, ⸺ ⸺ ⸺, 113 S.Ct. 1913, 1919–20, 123 L.Ed.2d 598 (1993).

**7.** *See, e.g., United States v. Bell,* 966 F.2d 703, 704–06 (1st Cir.1992); *United States v. Fitzhugh,* 954 F.2d 253, 255 (5th Cir.1992); *United States v. Gonzalez–Lopez,* 911 F.2d 542, 547–48 (11th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

**8.** *See, e.g., United States v. Young,* 990 F.2d 469, 472 (9th Cir.1993); *United States v. Joshua,* 976 F.2d 844, 856 (3d Cir.1992); *United States v. Johnson,* 953 F.2d 110, 113 (4th Cir.1991) (holding that "the offense of felon in possession of a firearm, in the absence of any aggravating circumstances charged in the indictment," is not a crime of violence).

**9.** *See, e.g., United States v. Chapple,* 942 F.2d 439, 442 (7th Cir.1991); *United States v. Cornelius,* 931 F.2d 490, 493 (8th Cir.1991); *United States v. Maddalena,* 893 F.2d 815, 820 (6th Cir.1989).

**10.** Our circuit currently stands somewhere in the middle of these three positions. In *United States v. Walker,* 930 F.2d 789 (10th Cir.1991) (decided prior to amendment 433), we recognized the need to avoid "ad hoc mini-trials regarding an individual's prior criminal conduct," but held that this concern was not present when examining the defendant's instant offense. *Id.* at 793–95. The implication of *Walker* is that a conduct-specific inquiry is permissible when considering whether the instant offense is a "crime of violence" under section 4B1.2(1), but not when evaluating prior offenses. That position is clearly open to reexamination in light of succeeding amendments to the guideline commentary and more recent cases from other circuits discussed above.

narrowly interpreted and applied. Even if the clause permits some factual inquiry, the Commission has signalled all along, through and including its most recent commentary clarifications, that the inquiry is to be limited.[11] This narrow approach is, of course, inconsistent with the theoretical underpinnings of the Guidelines generally, in which "relevant conduct" and surrounding circumstances, proven by a preponderance through any information having "sufficient indicia of reliability," are routinely considered. *See* U.S.S.G. §§ 1B1.3, 6A1.3.

One reason for this inconsistency, as courts have noted, is the impracticality and potential unfairness of reviewing conduct that took place long ago. We believe another reason, however, is that the career offender provisions are an example, like mandatory minimums, of statutorily mandated sentencing thrust upon the Sentencing Commission by Congress, which the Commission finds difficult to reconcile with its mission in establishing the guidelines. *See United States v. Tisdale,* 7 F.3d 957, 962–63 (10th Cir.1993) (discussing the "irreconcilable" incompatibility between mandatory statutory sentencing and the guideline scheme). Statutorily mandated sentences, as evidenced by mandatory minimums and the career offender provisions, impose severe punishments at sudden and arbitrary junctures, in contrast to the carefully constructed, graduated scheme of sentencing reflected in the Guidelines.[12]

Second, and more specific to burglary, the Commission has made it clear that it does *not* view "second-degree" or "unaggravated" burglaries of structures other than dwellings as crimes of violence. This view is diametrically opposed to the position taken by Congress, which has defined "violent crime" in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). In 1986, when Congress amended and recodified the ACCA, it

expressly stated that *every* burglary *inherently* presents a serious potential risk of physical injury to another. Accordingly, it defined violent felony in § 924(e), in part, as a crime that:

> is *burglary,* arson or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).

The Supreme Court, in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), examined Congressional intent with respect to including "burglary" under its definition of "violent crime" and commented as follows:

> The legislative history also indicates that *Congress singled out burglary* (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense, both in 1984 and in 1986, *because of its inherent potential for harm to persons.* The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape. Congress apparently thought that *all burglaries* serious enough to be punishable by imprisonment for more than a year *constituted a category of crimes that shared this potential for violence* and that were likely to be committed by career criminals. There never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the

---

11. Effective November 1, 1991, the Sentencing Commission made two changes to Application Note 2 of section 4B1.2: (1) It inserted the parenthetical "(*i.e.,* expressly charged)" to clarify "the conduct set forth ... in the count of which the defendant was convicted"; and (2) it added a sentence that reads, "Under this section, the conduct of which the defendant was convicted is the focus of the inquiry." *See* U.S.S.G. § 4B1.2, comment. (n. 2.) (Nov. 1991, 1992, 1993) (em-

phasis added); *see* U.S.S.G.App. C, amendment 433.

12. The Commission's hostility to statutorily mandated sentences is evident, for instance, in U.S.S.G. § 5G1.1(b), in which statutory minimums are converted to guideline maximums, with departure analysis required for any increase. *See Tisdale,* 7 F.3d at 961–63.

building is occupied, or the crime occurs at night.

*   *   *   *   *   *

Congress thought *ordinary burglaries,* as well as burglaries involving some element making them especially dangerous, *presented a sufficiently "serious potential risk" to count towards enhancement.*
*Id.* at 588, 597, 110 S.Ct. at 2152–53, 2157 (emphasis added).

The Sentencing Commission has obviously declined to adopt that view. The Commission promulgated its career offender provisions in section 4B1.1 and 4B1.2 pursuant to a mandate from Congress. 28 U.S.C. § 994(h). It originally defined "crime of violence" by reference to 18 U.S.C. § 16,[13] but later replaced this definition with one patterned after § 924(e)(2)(B), *see* U.S.S.G. App.C. amendment 268, with one significant difference. The Commission's definition conspicuously omitted burglary, with the single exception of "burglary *of a dwelling.*" U.S.S.G. § 4B1.2(1)(ii) (Nov.1989). From 1989 to the present, the Commission has retained this distinction from § 924(e). *See id.* (Nov.1993). A recent proposal to amend section 4B1.2(1)(ii) "to include all burglaries, and not just burglaries of a dwelling," 57 Fed.Reg. 62832 (proposed Dec. 31, 1992), was not adopted.

In summary, the question of whether a "mere" unlawful entry of a non-dwelling for the purpose of stealing property is regarded as conduct which presents a "serious potential risk of physical harm to others," and is therefore a "crime of violence," comes down to a policy judgment. Congress says it does. The Sentencing Commission, however, says it does not. Thus, in construing the "otherwise" clause of section 4B1.2(1)(ii), which must be done narrowly, it does not matter whether we look categorically at the elements of Defendant's second-degree burglary conviction (entry of a structure with intent to steal), or at his conduct in its context, which

essentially mirrors the elements. Either way, our conclusion is the same: Defendant's unlawful entry into this building for larcenous purposes did not constitute a "crime of violence" as defined in the "otherwise" clause.

### B. *Burglary of a "Dwelling"*

██ Whether Defendant actually burglarized a "dwelling" is another matter. The government raises this argument in the alternative to its previous argument, which we have rejected. Our inquiry here is hindered by the fact that this contention was not developed and ruled on in the trial court. Nevertheless, as Defendant does not protest the fact that the government now raises this argument, we consider it and reject it also.

We define "dwelling" as a matter of federal law, "independent of the labels employed by the various States' criminal codes." *See Taylor,* 495 U.S. at 592, 110 S.Ct. at 2155. Just because we are not bound by a state's definition of dwelling, however, does not mean that state definitions are useless for career offender purposes. For example, Defendant was convicted of burglary of the second degree, as defined in Cal.Penal Code § 460(b), as opposed to burglary of the first degree under section 460(a), which is defined in part as "[e]very burglary of a dwelling house." Though certainly not dispositive, we do take note that the State of California could have originally attempted to prosecute Defendant as if he had burglarized a "dwelling house," but it did not.

██ The problem in this case is that Defendant's statutory count of conviction, section 459 (and 460(b)), is ambiguous because it encompasses burglaries of dwellings and non-dwellings, alike. As *Taylor* indicates in discussing § 924(e), a court can look beyond the statutory count of conviction in order to resolve a patent ambiguity caused by a broad state statute, *Taylor,* 495 U.S. at 602, 110 S.Ct. at 601, and we take the same position

---

**13.** Section 16 reads:
The term "crime of violence" means:
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 16.

with respect to the Guidelines. However, similar to the Court's approach in *Taylor*, we limit that examination to the charging papers, judgment of conviction, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge.

We have examined the official charging papers and sentencing documents in the record before us with respect to Defendant's second-degree burglary conviction and find them insufficient to support the government's argument that Defendant burglarized a "dwelling." While the police report apparently incorporated into Defendant's charging papers explains that the Rouge Center houses drug rehabilitation patients, the report is sketchy as to the layout of the building. The building was obviously being used for multiple purposes and was open to the general public in the immediate area of the burglarized manager's office. The manager's office, itself, was locked and, therefore, obviously not part of a common living area into which residents could enter at any time.

Finally, we resolve any ambiguity in favor of narrowly interpreting the career offender provisions, for reasons discussed above. Although we resist the temptation to stamp our approval on any particular definition of "dwelling," we can say with certainty that the manager's office Defendant burglarized is not within it.

C. *Conclusion*

For these reasons, we conclude that Defendant's second-degree burglary conviction in 1989 was not a "crime of violence," and that the district court misapplied the Guidelines by using a non-qualifying prior conviction to classify Defendant as a career offender. Accordingly, we are obliged to remand this case for resentencing. 18 U.S.C. § 3742(f)(1).