**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 19 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSE G. TAPIA GARCIA,

      Petitioner,

      v.

IMMIGRATION &
NATURALIZATION SERVICE,

      Respondent.

No. 99-9540

---

**PETITION FOR REVIEW OF AN ORDER**
**OF THE BOARD OF IMMIGRATION APPEALS**
**(INS No. A41 117 848)**

---

Michael A. Walker, Walker & Associates, P.C., Denver, Colorado, appearing for Petitioner.

Marion E. Guyton, Trial Attorney (Richard M. Evans, Assistant Director, with him on the brief), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, appearing for Respondent.

---

Before **TACHA**, Chief Judge, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

**TACHA**, Chief Judge.

---

      Petitioner Jose G. Tapia-Garcia appeals a Board of Immigration Appeals'

decision affirming an immigration judge's ruling that Petitioner is removable as a

result of his conviction for commission of an aggravated felony. After concluding Petitioner is an alien subject to removal for commission of an aggravated felony, we dismiss for lack of jurisdiction under section 242(a)(2)(C) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a)(2)(C).

## I. Factual Background

On August 4, 1998, Petitioner Jose G. Tapia-Garcia, a legal permanent resident of the United States and citizen of Mexico, was convicted in Idaho for driving under the influence (DUI) in violation of section 18-8004(5) of the Idaho Code. Although he received a sentence of five years, Mr. Tapia-Garcia served only two months in prison. The Immigration and Naturalization Service (INS) commenced removal proceedings on January 6, 1999, arguing Mr. Tapia-Garcia be removed pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which provides for removal of an "alien who is convicted of an aggravated felony at any time after admission." The INS alleged that Idaho's DUI offense constitutes a "crime of violence," one of the categories of aggravated felonies contained in the INA's aggravated felony definition. 8 U.S.C. § 1101(a)(43)(F). The immigration judge concluded that Mr. Tapia-Garcia's DUI offense satisfies the statutory definition of crime of violence, 18 U.S.C. § 16(b), and ordered Mr. Tapia-Garcia removed to Mexico. On October 6, 1999, the Board of Immigration Appeals (BIA) agreed with the immigration judge and dismissed the appeal. Mr.

Tapia-Garcia currently resides in Mexico.

## II. Justiciability

Under the former INA provisions, as well as the transitional rules, a petitioner had to request a stay of deportation in order to preserve judicial review. INA § 106(c), 8 U.S.C. § 1105a(c)(1994), as modified by IIRIRA § 309(c), Pub. L. No. 104-208, 110 Stat. 3009. In 1996, as part of Congress's effort to expedite the removal process, amendments to the INA deleted the stay requirement, facilitating the prompt deportation of an alien after entry of a removal order. Under the new provisions, however, judicial review is barred only if a petitioner does not exhaust administrative remedies or another court has previously determined the deportation order's validity. 8 U.S.C. § 1252(d). Hence, deportation no longer forecloses judicial review. Although current statutory provisions do not bar judicial review, we must nevertheless determine whether Mr. Tapia-Garcia's case continues to present a case or controversy under Article III, section 2, of the Constitution.

The Supreme Court has often described the doctrine of mootness as "'the doctrine of standing set in a time frame.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 120 S. Ct. 693, 709 (2000) (quoting Arizonans for Official

English v. Ariz., 520 U.S. 43, 68 n.22 (1997)).[1]  In order to satisfy Article III's case or controversy requirement, the "parties must continue to have a 'personal stake in the outcome' of the lawsuit."  Lewis v. Cont'l. Bank Corp., 494 U.S. 472, 478 (1990) (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)).  Specifically, the party seeking relief "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Id. at 477.  In addition, the Supreme Court has held that, after a petitioner's sentence expires, "some 'collateral consequence' of the conviction must exist if the suit is to be maintained."  Spencer v. Kemna, 523 U.S. 1, 7 (1998).  Because Mr. Tapia-Garcia is no longer subject to deportation and is not being detained by the INS, his situation is analogous to a prisoner whose sentence has expired.  As such, his deportation must have  "collateral consequences" in order to present a case or controversy cognizable on appeal.

Because the collateral consequences of Mr. Tapia-Garcia's deportation satisfy the narrowest historical standards, we need not engage in detailed analysis of Supreme Court precedent regarding this issue.  See id. at 8-13 (reviewing the history of and rationale underlying the collateral consequences requirement).  Historically, the narrowest approach to collateral consequences recognized only

---

[1] Although the mootness doctrine resembles "standing set in a time frame," the Supreme Court has cautioned it is not identical.  Friends of the Earth, 120 S. Ct. at 709.

-4-

"concrete disadvantages or disabilities that had in fact occurred, that were imminently threatened, or that were imposed as a matter of law (such as deprivation of the right to vote, to hold office, to serve on a jury, or to engage in certain businesses)." Id. at 8. Under the INA's admissibility provisions, Mr. Tapia-Garcia's removal and status as an aggravated felon render him permanently inadmissible unless the Attorney General consents to his reapplying for admission, 8 U.S.C. § 1182(a)(9)(A)(ii)-(iii), which is unlikely. His inability to reenter and reside legally in the United States with his family is a collateral consequence of his deportation because it is clearly a concrete disadvantage imposed as a matter of law. See Max-George v. Reno, 205 F.3d 194, 196 (5th Cir. 2000) (holding inadmissibility is a penalty imposed as a matter of law).

Because he is inadmissible, Mr. Tapia-Garcia is therefore threatened with an actual injury traceable to the INS. Furthermore, a favorable judicial decision would undoubtedly redress the injury: Mr. Tapia-Garcia's status as a legal permanent resident would be restored and he could return to the United States. See Gao v. Jenifer, 185 F.3d 548, 557 (6th Cir. 1999) (holding case not moot because requested relief would allow alien to apply for adjustment of status to that of a legal permanent resident). We therefore hold that this appeal is not moot.

### III.  Jurisdiction under the INA

-5-

## A.  Statutory Background

The INA's new permanent provisions, enacted in 1996, undoubtedly apply to Mr. Tapia-Garcia's case, but a brief review of all the relevant amendments is necessary to understand our discussion of jurisdiction under the new provisions. On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, and on September 30, 1996, enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, amended by the Act of Oct. 11, 1996, Pub. L. No. 104-302, 110 Stat. 3656. Through this legislation, Congress amended many provisions of the INA and significantly restricted judicial review of removal orders based on commission of certain crimes.  As the Supreme Court has observed, the limitations on judicial review, designed to "protect[] the Executive's discretion from the courts . . . can fairly be said to be the theme of the legislation."  Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 486 (1999).

The two acts produced three provisions governing judicial review of final removal orders based on an alien's commission of certain criminal offenses.  Two of these provisions, AEDPA § 440(a) and IIRIRA § 309(c)(4)(G), are temporary and do not apply to removal proceedings commenced after IIRIRA's effective

-6-

date, April 1, 1997.[2]  AEDPA § 440(a), which applies to petitions for review

pending on or after AEDPA's enactment, provides: "Any final order of

deportation against an alien who is deportable by reason of having committed a

criminal offense [including an aggravated felony] . . . shall not be subject to

review by any court."[3]  In addition, IIRIRA contains transitional rules, which

apply to aliens in removal proceedings before IIRIRA's effective date, April 1,

1997, but whose final removal orders are entered more than thirty days after

IIRIRA's enactment date, September 30, 1996.  IIRIRA § 309(c)(4)(G), reprinted

in 8 U.S.C. § 1101 note.  Although the language differs from AEDPA § 440(a),

IIRIRA's transitional rule also restricts judicial review when an alien is found

removable for committing certain criminal offenses.  The transitional provision

provides: "there shall be no appeal permitted in the case of an alien who is

inadmissible or deportable by reason of having committed a criminal offense

---

[2] IIRIRA's permanent provisions govern judicial review of removal orders in cases filed after IIRIRA's effective date, April 1, 1997.  These provisions, now appearing at 8 U.S.C. § 1252, replaced the old judicial review provisions provided by INA § 106 and codified at 8 U.S.C. 1105a.

[3] AEDPA § 440(a) amended 8 U.S.C. § 1105a(a)(10), which IIRIRA subsequently repealed.  Removal proceedings commenced after April 1, 1997, are subject to the INA's permanent provisions, as amended by IIRIRA.  8 U.S.C. § 1252.  AEDPA § 440(a) therefore applies to petitions pending on or after AEDPA's enactment date, April 24, 1996, provided removal proceedings commenced *before* April 1, 1997.  See Fernandez v. INS, 113 F.3d 1151, 1154 (10th Cir. 1997) (holding AEDPA § 440(a) applies to petitions pending on AEDPA's enactment date).

[including an aggravated felony] . . . ." IIRIRA § 309(c)(4)(G), reprinted in 8 U.S.C. § 1101 note.

In addition to the transitional rule, IIRIRA contains a permanent provision governing judicial review of removal orders resulting from removal proceedings commenced after April 1, 1997. 8 U.S.C. § 1252(a)(2)(C). This provision provides: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense [including an aggravated felony] . . . ." Id. Because Mr. Tapia-Garcia's removal proceedings began after April 1, 1997, the permanent provision clearly applies to his petition for review.

B. Interpreting 8 U.S.C. § 1252(a)(2)(C)

The above discussion of the transitional rules is relevant because, although we have not decided the extent of our jurisdictional inquiry under the permanent provision, we have addressed this question under AEDPA § 440(a) and IIRIRA § 309(c)(4)(G). Berehe v. INS, 114 F.3d 159 (10th Cir. 1997). In Berehe, we held that these transitional provisions foreclose all judicial review, including review of the jurisdictional facts, or conditions, upon which the jurisdictional bar is premised; that is, we decided we could not review whether an alien is removable under the relevant statutes. Id. at 161. We relied especially on the

language of IIRIRA's transitional rule, which clearly forecloses appellate review: "'*there shall be no appeal permitted* in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense . . . .'" Id. (quoting IIRIRA § 309(c)(4)(G) (emphasis added)).  In light of this language, we held: "No judicial review of the jurisdictional issue is possible where the alien is precluded from filing an appeal." Id.

In reaching this conclusion, we acknowledged the Seventh Circuit's contrary conclusion that the language of AEDPA § 440(a) permits judicial review only in the case of an alien who is actually deportable for commission of a criminal offense listed in various enumerated sections.  Id. ( citing Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1997)).  Under this approach, in order to determine whether the jurisdictional bar applies, courts may determine whether "the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute." Yang, 109 F.3d at 1192.  Because the limitation on judicial review rests on certain conditions, the Seventh Circuit held courts retain jurisdiction to determine whether these conditions exist. Id.

In Berehe, we declined to adopt the Seventh Circuit's approach, but we explicitly distinguished the main Seventh Circuit opinion, Yang v. INS, 109 F.3d 1185 (7th Cir. 1997), recognizing that the Yang court only considered the AEDPA provision because IIRIRA's transitional provision did not apply to the facts of

that particular case. 114 F.3d at 161. Accordingly, unlike our decision in <u>Berehe</u>, the Seventh Circuit did not construe IIRIRA's language that "there shall be no appeal permitted." As we noted in <u>Berehe</u>, this language is particularly strong, preventing the filing of an appeal and therefore evincing clear congressional intent to foreclose all review. <u>Id.</u> The language of both AEDPA § 440(a) and IIRIRA's permanent provision, 8 U.S.C. § 1252(a)(2)(C), however, is not as restrictive. In particular, IIRIRA's permanent provision provides "no court shall have jurisdiction" when an alien is removable for commission of certain criminal offenses. 8 U.S.C. § 1252(a)(2)(C). We therefore conclude that the permanent provision is distinguishable from IIRIRA § 309(c)(4)(G), and we are not bound by our decision in <u>Berehe</u>.

Instead, we hold that we retain jurisdiction under the permanent provision to determine whether the jurisdictional bar applies. We may therefore decide whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute. The permanent provision divests courts of jurisdiction only if an alien *"is* removable by reason of having committed a criminal offense." 8 U.S.C. § 1252(a)(2)(C) (emphasis added). It does not say that courts lack jurisdiction if the an alien is *found* deportable for commission of certain criminal offenses. Thus, the statutory language clearly requires that we determine whether certain conditions exist before dismissing the appeal. In

holding we retain jurisdiction to conduct a limited review of jurisdictional facts, we follow the clear trend among our sister circuits. See, e.g., Mahadeo v. Reno, 226 F.3d 3, 9 (1st Cir. 2000); Bell v. Reno, 218 F.3d 86, 89 (2d Cir. 2000); Aragon-Ayon v. INS, 206 F.3d 847, 849 (9th Cir. 2000); Liang v. INS, 206 F.3d 308, 323 (3d Cir. 2000); Max-George v. Reno, 205 F.3d 194, 199 (5th Cir. 2000); Lewis v. INS, 194 F.3d 539, 542-43 (4th Cir. 1999); Diakite v. INS, 179 F.3d 553, 554 (7th Cir. 1999) (per curiam) (following Yang, 109 F.3d at 1196, in analyzing jurisdiction under AEDPA § 440(a)).

## IV. Standard of Review

Our review of the BIA's interpretation of immigration statutes is governed by the two-step test of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999); Onwuneme v. INS, 67 F.3d 273, 275 (10th Cir.1995); accord Bell, 218 F.3d at 90; Lettman v. Reno, 207 F.3d 1368, 1370 (11th Cir. 2000); Lewis, 194 F.3d at 544. But see Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000) (holding review of INS's interpretation of 8 U.S.C. § 1252(a)(2)(C) is de novo because a determination of jurisdiction is solely for the court to decide). We first apply de novo review in determining whether the plain language of the applicable statutory provisions clearly demonstrates Congress's intent. Chevron, 467 U.S. at 842-43; Onwuneme, 67 F.3d at 275. If, however, the statute is

subject to varying interpretations because it is "silent or ambiguous with respect to the specific issue," we must determine "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. As long as the interpretation is reasonable, we must defer to the agency's construction of the statute even though it may not conform with how we would interpret the statute in an original judicial proceeding. Id. Because the statute that Mr. Tapia-Garcia challenges is arguably subject to differing interpretations, we will defer to the BIA's interpretation provided it is reasonable.

## V. Removability by Reason of Having Committed a Criminal Offense

Because Mr. Tapia-Garcia does not dispute that he is an alien, the only jurisdictional fact left for our review under 8 U.S.C. § 1252(a)(2)(C) is whether Mr. Tapia-Garcia is removable by reason of having committed an aggravated felony under the relevant statutes.[4] The BIA affirmed the immigration judge's decision that Mr. Tapia-Garcia is deportable by reason of having committed an aggravated felony as provided in 8 U.S.C. § 1227(a)(2)(A)(iii). In the immigration context, the term aggravated felony is defined by the various offenses described in 8 U.SC. § 1101(a)(43). The definition specifically includes a "crime of violence . . . for which the term of imprisonment [is] at least one

---

[4] We cannot therefore review Mr. Tapia-Garcia's claim that the BIA's interpretation of 18 U.S.C.§ 16(b) violates his due process rights.

year," 8 U.S.C. § 1101(a)(43)(F), and incorporates the definition of crime of violence in 18 U.S.C. § 16. The immigration judge concluded that Mr. Tapia-Garcia's state conviction under section 18-8004(5)[5] of the Idaho Code satisfies the definition of crime of violence in 18 U.S.C. § 16(b), which defines a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Concluding Mr. Tapia-Garcia's DUI offense satisfies this definition, the immigration judge and BIA held he was deportable by reason of having committed an aggravated felony.

Mr. Tapia-Garcia argues that Idaho's DUI offense does not satisfy the statutory definition of crime of violence because it does not *"by its nature involve[] a substantial risk that physical force . . . may be used in the course of committing the offense."* 18 U.S.C.§ 16(b) (emphasis added). He argues that section 18-8004(5) of the Idaho Code broadly encompasses both violent and

---

[5] The Idaho statute provides in relevant part: "It is unlawful for any person who is an habitual user of, or under the influence of any narcotic drug, or who is under the influence of any other drug or any combination of alcohol and any drug to a degree which impairs the driver's ability to safely operate a motor vehicle, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to public use." Idaho Code § 18-8004(5). In order for an offense under this section to qualify as a felony, the defendant must have pled guilty or been found guilty of two previous violations for driving under the influence within five years. Idaho Code § 18-8005(5).

nonviolent crimes, so we may look beyond the Idaho DUI statute to determine whether his offense constitutes a crime of violence. He cites United States v. Smith, 10 F.3d 724 (10th Cir. 1993), in which we considered whether a burglary offense constitutes a crime of violence under the career offender Sentencing Guidelines. Id. at 731-34. Smith does not however apply to this case. First, although we acknowledged in Smith that some courts look only to the statutory elements of the conviction while others analyze the underlying facts, we declined to adopt either approach because under either approach the outcome was the same. Id. at 731. In addition, the Sentencing Commission's definition of crime of violence included only burglary of a dwelling, but the statute under which the defendant was convicted included both dwellings and non-dwellings. Id. at 733-34. We therefore looked beyond the statute only to determine whether the defendant had been convicted of burglary of a dwelling as required by the Commission's interpretation of what constitutes a crime of violence. Id. at 734.

Unlike the statute in Smith, the Idaho statute as interpreted by the BIA does not create any ambiguity; the BIA's decision encompasses all the conduct covered by the statute. We will not therefore inquire into the underlying factual circumstances of Mr. Tapia-Garcia's conviction, applying instead a categorical approach that considers only the generic elements of the offense. See United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993) (holding that, in

analyzing what constitutes a crime of violence under 18 U.S.C. § 16(b), "a court must only look to the statutory definition, not the underlying circumstances of the crime, to make this determination."); Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000) ("To determine whether an alien has committed an aggravated felony, courts look to the text of the statute violated, not the underlying factual circumstances.").

The BIA also applies a categorical approach in analyzing whether a conviction constitutes a crime of violence under 18 U.S.C. § 16(b), requiring "first that the offense be a felony and, if it is, that the 'nature of the crime–as elucidated by the generic elements of the offense–is such that its commission would ordinarily present a risk that physical force would be used against the person or property of another' irrespective of whether the risk develops or harm actually occurs." Matter of Magallanes-Garcia, Interim Decision 3341, 1998 WL 133301 (BIA Mar. 19, 1998) (quoting Matter of Alcantar, 20 I. & N. Dec. 801 (BIA 1994), available in 1994 WL 232083). The BIA's determination of whether the generic elements of the offense satisfy the statutory definition of crime of violence does not therefore include analysis of the underlying circumstances of the conviction. Id.

In a decision applying and clarifying its categorical approach, the BIA later held that a state offense for operating a vehicle while under the influence

constitutes a crime of violence, provided it rises to a felony under state law. Matter of Puente-Salazar, Interim Decision 3412, 1999 WL 770709 (BIA Sept. 29, 1999). In so holding, the BIA emphasized that the statutory definition of crime of violence in 18 U.S.C.§ 16(b) does not require intentional conduct. Focusing instead on the nature of the crime, the BIA concluded the operation of a vehicle while under the influence is a crime that "'by its nature involves a substantial risk that physical force against the person or property of another may be used.'" Id. (quoting 18 U.S.C. § 16(b)). Thus, relying on its precedent, the BIA concluded that the elements of Idaho's DUI offense clearly constitute a crime of violence, rendering Mr. Tapia-Garcia deportable for commission of an aggravated felony.

We hold the BIA reasonably construed 18 U.S.C. § 16(b) to include an offense for driving under the influence of drugs or alcohol. In analyzing the definition of crime of violence under the Sentencing Guidelines, the federal courts, including this court, have recognized the inherent danger in driving under the influence: "'[T]he risk of injury from drunk driving is neither conjectural or speculative. . . . Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well known.'" United States v. Farnsworth, 92 F.3d 1001, 1008-09 (10th Cir. 1996) (holding "the crime of grossly negligent driving under the influence of drugs or alcohol is a crime of

-16-

violence" under the Sentencing Guidelines); accord United States v. DeSantiago-Gonzalez, 207 F.3d 261, 264 (5th Cir. 2000) (following the reasoning of United States v. Rutherford, 54 F.3d 370, 376 (7th Cir. 1995), in holding the nature of drunk driving presents a "serious risk of physical injury" and is therefore a crime of violence under the Guidelines).  Although these cases hold that drunk driving constitutes a crime of violence under the Sentencing Guidelines (rather than the immigration statutes), the language of the relevant Guideline provision, USSG § 4B1.2, is similar to that of 18 U.S.C. § 16(b).[6]  While 18 U.S.C. § 16(b) differs slightly from USSG § 4B1.2, the well-documented danger inherent in drunk driving supports the conclusion that a DUI offense may also constitute a crime of violence under § 16(b) because the generic elements of the offense present "a substantial risk that physical force . . . may be used."  See United States v. Coronado-Cervantes, 154 F.3d 1242, 1244 (10th Cir. 1998) (recognizing the definitions differ but finding the rationale of a case involving 18 U.S.C. § 16(b) persuasive in analyzing whether an offense constitutes a crime of violence under

_____

[6] The definition of crime of violence in USSG § 4B1.2(a)(2) includes "conduct that presents a serious potential risk of physical injury to another." Moreover, the commentary accompanying USSG § 4B1.2 defines crime of violence in part as an offense involving "by its nature . . . a serious potential risk of physical injury to another." USSG § 4B1.2 comment. (n.2).  Similarly, 18 U.S.C. § 16(b) defines a crime of violence in part as an offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used."

USSG § 4B1.2).

Because Mr. Tapia-Garcia's DUI offense constitutes a crime of violence under 18 U.S.C. § 16(b) and is therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), he is deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Having determined that Mr. Tapia-Garcia is an alien subject to deportation for commission of an aggravated felony, we must DISMISS the case for lack of jurisdiction under 8 U.S.C. § 1252(a)(2)(C).