**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NAMGYAL TSERING,

      Petitioner - Appellant,

v.

UNITED STATES IMMIGRATION &
CUSTOMS ENFORCEMENT, ("ICE");
CARL ZABAT, Detention and Removal
Supervisor, ICE, Aurora, Colorado; JOHN
LONGSHORE, Director of the Detention
and Removal Field Office, ICE, Denver,
Colorado; MICHAEL CHERTOFF,
Secretary of Department of Homeland
Security ("DHS"); MICHAEL B.
MUKASEY, Attorney General,

      Respondents - Appellees.

No. 08-1299
(D. Colo.)
(D.C. No. 1:08-CV-1172-EWN)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY** and **HOLMES**, Circuit Judges, and **ARMIJO**,[**] District Judge.

---

    [*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

    [**]     The Honorable M. Christina Armijo, United States District Judge for the
District of New Mexico, sitting by designation.

## I. Introduction

Namgyal Tsering, a Tibetan national who was removed from the United States to Nepal on June 4, 2008, appeals from the district court's *Order* dismissing his case on the ground of mootness, as well as its *Order* denying reconsideration. Having determined that 8 U.S.C. § 1252(g) precludes judicial review of Mr. Tsering's claims, we **dismiss** for lack of jurisdiction.

## II. Factual Background

Namgyal Tsering is a Tibetan national who entered the United States in 1998 on a visitor's visa and with a Nepalese passport showing a name, nationality, country of birth and date of birth that were not his own. Mr. Tsering thereafter unsuccessfully applied for asylum. In 2008, in an *Oral Decision of the Immigration Judge After Remand*, Mr. Tsering was ordered removed. In his decision, which became administratively final on January 17, 2008, the Immigration Judge specifically found that Mr. Tsering is Tibetan.

In March of 2008, Mr. Tsering reported to the Denver office of the Department of Homeland Security and was placed in the custody of United States Immigration and Customs Enforcement (ICE). On June 4, 2008, Mr. Tsering was removed to Nepal.

As is relevant here, on May 12, 2008, Mr. Tsering's attorney learned that ICE had obtained travel documents from the Nepal embassy on the basis of documents and information misrepresenting Mr. Tsering to be a Nepali citizen. Accordingly, the attorney sent a letter to John Longshore, director of ICE's Denver Detention and Removal

Office, explaining that "the travel documents ICE had obtained from Nepal were obtained based on false information submitted by ICE to the Nepalese Embassy." [Aplt's Opening Brief at 9].

On June 3, 2008, Mr. Tsering filed an *Emergency Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief*. The petition was entered on the docket on June 4, 2008. Also on June 4, 2008, Mr. Tsering filed an *Emergency Motion for Temporary Restraining Order and Preliminary Injunction*, having been removed earlier that same day. The district court dismissed the case, finding that the emergency motion was moot in light of Mr. Tsering's removal. [Aplt's Opening Brief; Att. 1; see also Dkt. 1in 08cv1172EWN]. On July 22, 2008, the district court denied Mr. Tsering's motion for reconsideration on the ground that the court "continue[d] to be of the view that the case is moot and that any further relief must be sought from the court of appeals." [Aplt's Opening Brief; Att. 2]. On August 21, 2008, Mr. Tsering filed his notice of appeal.

III.     Discussion

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). "For that reason, every federal appellate court has a special

-3-

obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." Id. (quotations omitted). Generally speaking, then, "we must address questions pertaining to our or a lower court's jurisdiction before proceeding to the merits." United States v. Green, 405 F.3d 1180, 1184 (10th Cir. 2005) (*citing* Tenet v. Doe, 544 U.S. 1, 6 n. 4, 125 S.Ct. 1230, 1235 n. 4, 161 L.Ed.2d 82 (2005)). Moreover, a challenge to a court's jurisdiction may be raised at any time, even for the first time on appeal. United States v. Bustillos, 31 F.3d 931, 933 (10th Cir. 1994).

Between 1961 and 1996, the Immigration and Nationality Act (8 U.S.C. § 1158) made the courts of appeals the sole and exclusive fora for judicial review of orders of deportation. Singh v. Gonzales, 499 F.3d 969, 975 (9th Cir. 2007). While "[h]abeas review remained available to a limited class of aliens," id. at 976, "the fundamental purpose behind [this jurisdictional provision] was to abbreviate the process of judicial review of deportation orders in order to frustrate certain practices which had come to the attention of Congress, whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts." Foti v. I.N.S., 375 U.S. 217, 224, 84 S.Ct. 306, 311 (1963). In 1996, Congress sought to streamline immigration proceedings further by enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3546 (1996).

Through both of these Acts, Congress repealed the provision allowing habeas review for certain aliens. <u>Singh</u>, 499 F.3d at 976.

The REAL ID Act of 2005 again curtailed habeas review. As we have explained, "[t]he REAL ID Act, *inter alia*, shifted certain immigration disputes formerly raised through habeas corpus in the district courts to the courts of appeals and converted them into petitions for review." <u>Hem v. Maurer</u>, 458 F.3d 1185, 1188 n.3 (10th Cir. 2006) (*citing* Pub.L. No. 109-13, 119 Stat. 231 (2005)). In <u>Maurer</u>, we went on to say that, in enacting the REAL ID Act,

> Congress added a new provision codified at 8 U.S.C. § 1252(a)(5). Subsection (a)(5), entitled "Exclusive Means of Review," provides:
>
>> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.
>
> *Thus, this section makes a petition for review to an appellate court the sole means of review of an order of removal issued under the INA, and specifically excludes review under the habeas statutes*.

<u>Maurer</u>, 458 F.3d at 1188 n.3 (emphasis added).

Subsection (g) of § 1252 similarly sets forth an "exclusive jurisdiction" provision. In <u>Reno v. American-Arab Anti-Discrimination Comm.</u>, the United States Supreme Court considered the reach of § 1252(g), which provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

<u>Reno v. American-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 477-478, 119 S.Ct. 936941 (1999) ("AADC") (*quoting* 8 U.S.C. § 1252(g)).  The Court concluded that § 1252(g) demands a narrow reading, and "applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" <u>AADC</u>, 525 U.S. at 482, 119 S.Ct. at 943 (emphasis in original).

Although the Supreme Court in <u>AADC</u> considered discretionary actions to which § 1252(g) applies, "it did not explicitly state that the provision applies *only* to review of discretionary decisions by the Attorney General in these areas and not to review of non-discretionary decisions." <u>Foster v. Townsley</u>, 243 F.3d 210, 214 (5th Cir. 2001).  To the contrary, explained the Fifth Circuit, the plain language of § 1252(g) speaks of "'any cause or claim' that 'aris[es] from the decision or action by the Attorney General' in the three areas." <u>Id.</u> (*quoting* 8 U.S.C. § 1252(g)).  For this reason, just as it was necessary for the Fifth Circuit in <u>Foster</u>, we must determine whether Mr. Tsering's claims "arise

from" actions over which § 1252(g) precludes judicial review.  We conclude that they do.

Mr. Tsering claims that he was denied both substantive and procedural due process as a result of ICE's removal of him "based on a false identity that represented him to be a Nepali citizen[]" when, in fact, he is Tibetan. [Aplt's Opening Brief at 16].  He contends that § 1252(g) "does not preclude claims . . . that the Attorney General/ICE is exceeding its authority in requesting travel documents from a foreign country and removing an alien based on wrongfully obtained travel documents." [Aplt's Reply Brief at 15].

We agree with the Fifth Circuit that "claims that clearly are included within the definition of 'arising from' . . .  [are] those claims connected *directly and immediately* with a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.'"  Humphries v. Various Federal USINS Employees, 164 F.3d 936, 943 (5th Cir. 1999) (emphasis added).  Mr. Tsering's claim that "ICE submitted a request for travel documents for Mr. Tsering to the Nepal Embassy and included in its request a false Nepali passport that portrayed Mr. Tsering as a Nepali citizen[,]" [Aplt's Opening Brief at 10], is directly and immediately connected to the execution of his removal order, because these travel documents allowed for Mr. Tsering's removal to Nepal.  Because Mr. Tsering's claims arise from actions over which § 1252(g) precludes judicial review, we conclude that we are without jurisdiction to consider or review them further.

Even if this were not the case, however, we would be hard-pressed to view this matter as one for which federal habeas relief would be available.  We emphasize that at

the time Mr. Tsering filed his *Emergency Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief* he was in custody.  However, because he has since been released (removed), he would need to demonstrate that "'[has] suffered, or [is] threatened with, an actual injury traceable to [ICE] and likely to be redressed by a favorable judicial decision.'"  Tapia-Garcia v. I.N.S., 237 F.3d 1216, 1217-18 (10th Cir. 2001) (*quoting* Lewis v. Cont'l. Bank Corp., 494 U.S. 472, 478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).  He would also need to show "collateral consequences" to his deportation.  See Tapia-Garcia, 237 F.3d at 1218 ("Because [petitioner] is no longer subject to deportation and is not being detained by the INS, his situation is analogous to a prisoner whose sentence has expired. As such, his deportation must have 'collateral consequences' in order to present a case or controversy cognizable on appeal.").

Mr. Tsering argues that the collateral consequence he faces as a result of his deportation is the fact that his removal from the United States renders him inadmissible for a period of 10 years, thus preventing him from residing legally in this country with his son. [Aplt's Opening Brief at 15].  Importantly, however, he does not challenge his removability in general; he challenges his removal to specifically Nepal.  Thus, a major flaw in his argument is that he would be facing the same consequence—inadmissibility— had he been removed properly.  In this regard, Mr. Tsering's situation is far different from the one that arose in Tapia-Garcia, which Mr. Tsering submits is controlling, and in which we held that an appeal was not moot because a favorable judicial decision would "undoubtedly" have redressed the claimed injury inasmuch as the petitioner's status as a

legal permanent resident would have been restored and he would have been allowed to return to the United States. Tapia-Garcia, 237 F.3d at 1218. The petitioner in Tapia-Garcia, however, had appealed from the Board of Immigration Appeals' decision affirming the Immigration Judge's ruling that he was removable; Mr. Tsering has not challenged his *removability*.

We note that at oral argument, counsel for Mr. Tsering posited that this case "began as a habeas case and it remains a habeas case." However, when questioned as to what would provide us with a basis to give relief if this were not a habeas case, counsel conceded that, were that the situation, "ICE's actions would wholly evade review. ICE would be free to act with impunity. . . ." We determine that this case is not properly brought as a habeas case but that, even if it had been, we can provide Mr. Tsering no relief where (1) he no longer is in ICE custody, and (2) he has not demonstrated, among other things, collateral consequences resulting from his deportation.

## IV. Conclusion

For the reasons set forth above and, having determined that 8 U.S.C. § 1252(g) precludes judicial review of Mr. Tsering's claims, we **dismiss** this case for lack of jurisdiction.

ENTERED FOR THE COURT,


M. Christina Armijo
District Judge Sitting by Designation